STEWART *v.* SALAMON.

1. Where a promissory note for dollars, made in Georgia, in January, 1863, is shown to have been solvable in Confederate treasury notes, the sum thereby payable in actual money must be ascertained by the value in coin or legal currency of the United States, at the time when and the place where the note was made, of such treasury notes, equal in nominal amount to the number of dollars specified.

2. Where a payment is indorsed in the same monetary terms which are used in the note itself, the presumption is that it was intended to be credited in the same circulating medium. If the parties intended otherwise, some proof on the subject should be presented.

3. Accordingly, where a promissory note for dollars, shown to be solvable, at the time it was made, in Confederate treasury notes, had a receipt for a specified number of dollars indorsed upon it, it was *held* that, in the absence of proof, the principal designated on the face of the note was reduced only by the amount specified in the receipt.

APPEAL from the Circuit Court of the United States for the Southern District of Georgia.

*Mr. Alexander H. Stephens* for the appellants.
*Mr. P. Phillips* and *Mr. W. H. Phillips, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

This was an original suit in the Circuit Court of the United States, and was not transferred from the State court. The bill does, it is true, refer to two suits in the State court, — one at law, commenced by Mordecai, to foreclose, under the statute of Georgia, the same mortgage in controversy here; and the other in equity, commenced by Stewart against Mordecai, — both of which were transferred to the Federal court; but all that the bill asks with respect to them is, that the parties may be enjoined from their further prosecution, and be required to litigate with the complainants here. So far, then, as the present case is concerned, it does not matter whether the transfer from the State court of the two suits was before a trial or hearing was had in them, or after the judgments rendered had been reversed. There is no plea of other suits pending, nor any action asked with respect to the two suits mentioned, except as stated.

This case is brought to foreclose a mortgage executed by one James Stewart, now deceased, upon certain real property situ-

ated in the State of Georgia, to secure his promissory note for $44,000, and for the sale of the mortgaged premises to pay the amount due thereon. It does not differ from ordinary suits of foreclosure in equity, except in making tenants of the property parties, to prevent them, pending the litigation, from paying over rents to the administrator, or to the heirs of the deceased, among whom, it is alleged, the administrator has unlawfully partitioned the premises. The note of Stewart bears date on the 8th of January, 1863, and is payable to the order of Allen S. Cutts, in twelve months after date, with interest. It was made for the accommodation of Cutts, who indorsed it to Mordecai, to whom also the mortgage was executed, upon the purchase of certain bonds of the Georgia and Pensacola Railroad Company. In March, 1866, $15,325 were credited upon the note. Subsequently, the note and mortgage were assigned to the complainants. The point of contention is, whether the note was originally solvable in Confederate currency, or in the legal currency of the United States. The Circuit Court must have held that it was solvable in legal currency, and was so intended by the parties, for its decree is for the full amount claimed. In its ruling in this respect, we think the court erred. It seems to us that the evidence abundantly justifies the conclusion that the transaction, for which the note was in part given, was in Confederate currency. At the time the railroad bonds were purchased, Jan. 6, 1863, the treasury notes of the Confederate government constituted the principal currency of Georgia, in which business transactions were conducted. It was to them that reference was always made when dollars were mentioned, unless coin was specified. This condition of things appearing, the presumption is, that, in the purchase of the railroad bonds, the parties had those notes in contemplation. *Thorington* v. *Smith*, 8 Wall. 1; *The Confederate Note Case*, 19 id. 548; *Wilmington & Weldon Railroad Co.* v. *King*, 91 U. S. 3. And the testimony of Cutts, and of others cognizant of the transaction, except Mordecai, is positive that such was the case. The conceded facts respecting the transaction lead to the same conclusion. The value of the bonds was estimated at the time in Confederate currency; they were sold for eighty cents on the dollar in that currency. The cash payment of over $12,000

was in the same currency. The $50,000 note given at the time was paid a few months afterwards in that currency. It is highly improbable that an exceptional distinction was made with reference to the balance for which the note of Stewart was executed. Certainly, the presumption is strong the other way. The transaction and testimony together leave no doubt in our minds on the subject.

The sum, therefore, in actual money, which the note of Stewart represented, and which he promised to pay, must be determined by the value in coin or legal currency of the United States, at the time the note was made, and at the place where it was made, of Confederate treasury notes, equal in nominal amount to the number of dollars specified. And as the payment is indorsed on the note in the same monetary terms which are used in the note itself, the presumption is, that the payment was intended to be credited in the same scale of values. If the parties intended otherwise, some proof on the subject should have been presented. The credit was made without any explanation; and there is no evidence that the value of the dollars mentioned in the receipt was different from the value of the dollars mentioned in the note. As the matter is presented to us, the principal designated on the face of the note is only reduced by the amount specified in the receipt. The true rule, therefore, for ascertaining the rights of the parties in the case, is to calculate the interest on the principal of the note up to the time of the payment, and, having then deducted the payment, to treat the balance as the debt then due; the amount in money to be determined by the value in Georgia of Confederate notes in coin or the legal currency of the United States at the time the note was made. Interest should be calculated on this balance to the date of the decree. The note, with interest, amounted, when the payment was made, to $53,787; the credit of $15,325 reduced it to $38,462. This amount, scaled by the value of Confederate currency in Georgia at the date of the note, — three to one, — would make a balance due in lawful money, March 17, 1866, of $12,820. This amount, with interest, will constitute the sum which should be adjudged due, and for its payment the proceeds of the mortgaged premises when sold should be applied.

The decree of the Circuit Court must, therefore, be reversed, and the cause be remanded for further proceedings in accordance with this opinion; and it is                    *So ordered.*