BIRGE–FORBES CO. v. HEYE.

(Circuit Court of Appeals, Fifth Circuit. February 11, 1918.)

No. 3065.

1. Judgment ⊜⟶721—Conclusiveness—Matters Concluded.

Where defendant, an American exporter of cotton, agreed that the rules of the cotton exchange of which plaintiff, its foreign broker, was a member, should govern arbitration proceedings, and pursuant to the rules of the exchange plaintiff paid some of the awards against defendant, a judgment for plaintiff in an action against defendant, though limited to the amount of plaintiff's payment, was, the entire awards being involved, a conclusive adjudication as to their validity.

2. Limitation of Actions ⊜⟶2(1)—Foreign Statutes—Agreement for Arbitration and Award.

Where an American exporter of cotton, contemplating that there would be controversies as to quality, agreed with its German broker that such controversies should be arbitrated pursuant to the rules of the cotton exchange of which he was a member, and, arbitration being thereafter had, the broker paid awards against his principal, the American exporter, German Civil Code, § 477, declaring that the claims for reduction or for compensation on account of the absence of a promised quality are barred by prescription in the case of movables in six months after delivery, unless the seller has fraudulently concealed the defect, has no application, and the broker's action on account of awards paid cannot be defeated, though at the time of payment action was barred.

3. Evidence ⊜⟶84—Presumptions—Value of German Mark.

In action by German broker against his American principal to recover on account of payments made as the result of awards in arbitration proceedings against the principal, it will be presumed, payment having been made in German marks, that the mark was then at its normal value, notwithstanding at time of trial it had, as a result of a subsequent war, to which Germany was a party, greatly depreciated.

4. Appeal and Error ⊜⟶1047(1)—Review—Harmless Error—Depositions.

The refusal of a federal court for Texas to suppress depositions taken in Germany, on the ground that they had not been transmitted to the court as provided by the Texas statutes, was not reversible error, though such depositions, because of a war between Germany and other countries, had been transmitted from Germany to the State Department at

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Washington, and thence mailed to the court, for, had the depositions been committed to the mails in Germany, they might well never have reached their destination.

5. **JUDGMENT** ⬅➡731—CONCLUSIVENESS—MATTERS CONCLUDED.

Where plaintiff, a German broker, in pursuance of the rules of the cotton exchange of which he was a member, paid awards against his principal, an American exporter, a judgment in a previous action by plaintiff against his principal, which restricted his recovery to the amount of awards paid, cannot be deemed an adjudication against plaintiff's right of recovery on payment of the other awards; the judgment disclosing that it was held plaintiff's right of action as to the awards unpaid had not accrued.

6. **WAR** ⬅➡10(2)—TRADING WITH THE ENEMY ACT—EFFECT.

Under Trading with the Enemy Act Oct. 6, 1917, c. 106, 40 Stat. 411, a writ of error to review a judgment in favor of an alien, who became an alien enemy before disposition thereof, need not be held in abeyance; but, the judgment being upheld, it should be modified, so as to direct payment to the clerk of the court, and by him to be transferred to the Alien Property Custodian, without prejudice, however, to the rights of any person, not an alien enemy, to establish an interest therein.

In Error to the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Action by Carl R. Heye against the Birge-Forbes Company. There was a judgment for plaintiff, and defendant brings error. Modified and affirmed.

Jesse F. Holt and H. O. Head, both of Sherman, Tex., for plaintiff in error.

Robert Harrison and Robert M. Rowland, both of Ft. Worth, Tex., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

BATTS, Circuit Judge. Suit by Carl R. Heye, defendant in error, hereinafter called plaintiff, against the Birge-Forbes Company, plaintiff in error, hereinafter called defendant, was filed December 4, 1914. The petition alleged that plaintiff was a citizen of Germany, and the defendant a Texas corporation; that in 1901 defendant, who was engaged in business of buying, selling, and exporting cotton, made a contract with plaintiff, then a cotton broker in Bremen, whereby he became selling agent in that city for defendant; that this relation continued until May, 1911; that the contract provided that all sales were to be made subject to and governed by Bremen class and arbitration and the rules of the Bremen Cotton Exchange; that between October 1, 1910, and about January 1, 1911, plaintiff made sundry sales for defendant to a number of different buyers; that disputes and controversies arose between the seller and the buyers as to the quality of the cotton sold, the buyers claiming that the cotton delivered was not up to the quality and description offered by defendant, and upon which the prices were based, and that the cotton was not in accordance with the contracts of sale; that these claims and disputes were submitted to arbitration in accordance with the rules of the Cotton Exchange, the

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

final result of such arbitration being awards aggregating 312,749.30 German marks (an exhibit in detail of these sales and awards was attached to the petition); that in some of the arbitrations appeals were taken to the appeal committee, and were regularly decided and the results certified, as indicated by another exhibit; that in the arbitration proceedings defendant was represented by controllers selected by it; that the proceedings were in all respects regular, and the awards made in good faith, and the defendant duly notified of the results; that by the final determination of the arbitrations plaintiff, by virtue of his contract, and under the rules of the Exchange, and by the terms of the contracts delivered by him to purchasers of the cotton, became bound and legally liable to pay at once to the purchasers the awards made by the arbitrators; that, on account of the matters alleged, plaintiff brought suit against defendant in the court in which this suit was pending, the suit being No. 156 on the law docket, and on May 23, 1913, recovered a final judgment for $43,082.64, the sum including $36,610.96 that had theretofore been paid by plaintiff to the buyers on the arbitration, $1,730.16 for weight claims and other items mentioned in the pleadings, and interest on those sums to judgment; that this judgment was in full force and effect, and plaintiff averred that it was a binding and conclusive adjudication of the fact that the arbitrations were valid, and that the result of the awards had not been set aside, but remained in force; that, after the rendition of the judgment, plaintiff paid the remaining sums due on the awards, to wit, $38,209.56. Plaintiff prayed for judgment for this sum, with interest.

Defendant, answering, attacked the awards made by the arbitrators, and further pleaded that, under the laws of Germany, each of the claims was barred by limitation, and that if the plaintiff made the payments, as he alleges, he made them long after they were barred by limitation under the laws of Germany as to both the plaintiff and the defendant, and when he was under no legal obligation to pay them.

Judgment was for plaintiff under instructions from the court.

The substantial issues involved in the trial of the case are indicated by the assignments of error of defendant after judgment against it, to the effect that there was error: (1) In charging the jury that the judgment of May 23, 1913, adjudged the validity of the awards involved in this suit, and especially in charging that that judgment adjudicated awards in excess of $36,610.96; (2) in refusing defendant's requested instruction to the effect that the evidence was not sufficient to authorize the finding that any awards were rendered in favor of any of the buyers of cotton sold by plaintiff, as agent of the defendant; (3) in the charge that the claims were not barred by the laws of limitation in Germany; (4) in instructing a verdict for plaintiff for $41,536.79; and (5) in overruling the defendant's motion to quash the depositions of Oscar Folletin and Carl R. Heye.

[1] The substantial questions with reference to the validity of the awards by the Bremen Cotton Exchange and the defendant's liability thereon were involved in the case referred to in plaintiff's petition, No. 156 in the District Court, between the same parties. It appears, however, in that case that only a part of the award for which the

plaintiff herein became liable had been paid by him, and the court instructed the jury that the plaintiff could not recover for any part of the amount for which he had become liable, except to the extent that he had actually paid it. He thereupon directed a verdict for the amount so paid, and the jury returned a verdict to this effect:

"We find for the plaintiff in the sum of $36,610.96, being the amount paid by the plaintiff on the awards made by the Bremen arbitrators upon the differences in the cotton as sold and that actually delivered at Bremen to the buyers at that place, together with 6 per cent. interest on both of said sums from May 1, 1911."

A judgment was entered, in which the verdict of the jury was incorporated, and by which it was adjudged that the plaintiff recover of defendant the sum of $43,082,64, with interest, "said sum being the principal and interest of such parts of the liabilities alleged in plaintiff's pleadings to have been incurred by him as he has up to this time actually paid, and as to which a cause of action in his favor against the defendant has already accrued."

The judgment from which quotations have just been made, considered in connection with the pleadings, the charge of the court, and the verdict of the jury, necessarily involve the proposition that the defendant was bound by the awards in arbitration, which were alleged in the petition, and which became the basis of the suit. It is apparent that the only circumstance which prevented the plaintiff from recovering a judgment for the total amount sued for was the fact that, while he had become liable to pay the entire amount of the awards, some of the awards had not actually been paid by him. The material and essential issues of law and fact presented in the present case were presented by the pleadings in the previous case, were the subjects of the introduction of evidence, of argument of counsel, of discussion by the court, and were necessarily ruled upon in giving the judgment rendered in that case. If the defendant was not bound by the arbitration awards, the judgment in that case was erroneous. If it was not so bound, the judgment could not have been rendered. The former case necessarily involved a determination of the basic facts essential to recovery in this case. With reference to this matter it has had its day in court, and is not entitled to a second determination of it. A judgment is conclusive in a subsequent action between the same parties of all issues definitely adjudicated.

Evidence was introduced to establish the identity of the awards sued on in this case with the awards which were passed upon in the other case, but for which judgment was not rendered on account of the circumstance that plaintiff had not yet discharged them.

[2] The plea of limitation is based upon section 477 of the German Civil Code, to the effect that:

"The claim for cancellation or reduction and the claim for compensation on account of the absence of a promised quality are barred by prescription, unless the seller has fraudulently concealed the defect, in the case of movables in six months after delivery; in the case of land, in one year after the transfer. The period of prescription may be extended by contract."

The parties to this suit, in entering into their contract, realized that there would be differences between them and the purchasers with

reference to the quality and grade of the cotton sold, and the agreement provided that these matters would be committed to the decision of the board of arbitration of the Bremen Cotton Exchange. No controversy arose with reference to these matters until a number of years after the contract was signed. When they did arise they were submitted to the arbitrators, as contemplated by the contract. The findings of the arbitrators being objected to, an appeal was taken and the findings affirmed. When it was determined by the arbitration appeal that the cotton sold by the defendant to German buyers failed in quality, grade, and staple, and that certain amounts of money should be paid, the awards were no longer claims for compensation of the character described by section 477, but had become ascertained and liquidated demands. It has not been made to appear that this provision in the contract was one which could not be legally made. Considering the fact that the parties ultimately liable for deficiencies in grade, etc., resided in a distant country, and that the facts with reference to their liability could not be promptly developed, and that recovery against them, especially on small claims, would have been expensive and difficult, the provision as to arbitration was one which it was perhaps necessary for them to make, in order to successfully conduct their business. The provision inured to the benefit both of their agent and his customers. It took the place of their right to appeal to the courts—a right rendered unsatisfactory, under the circumstances, on account of the short period of limitation. The buyers received what was due to them from Heye, in accordance with the contracts made with them by Heye, under authority from defendant; and, under the contract which gave this authority, he is entitled to be reimbursed. Even if Heye had been in a position to defeat the claims under a plea of limitation, not having so defeated them, but having done that which the contract contemplated that he should, and which common honesty required he should do, he is entitled to reimbursement from his principal. As between him and defendant, section 477 manifestly has no application.

[3] One of the assignments raises the question as to whether, in the rendition of a judgment, the German mark should be computed at its normal value, or at the value which it had at the time of the trial; the former being 23.8 cents, and the latter 18⅛ cents. The purpose of the judgment is to make whole the plaintiff for the amount which he paid out in discharging the obligations of his principal. The evidence failing to disclose any depreciation of the German mark at the time of this payment, the assumption should be that the value of the mark was at that time the normal value, and the judgment should be predicated upon this value.

[4] The depositions of the witnesses Polletin and Heye were apparently taken under the Texas statute. These depositions were not returned directly by the officer taking them, nor directly by any one to whom he intrusted them. They were taken in Germany, and were transmitted to the United States in the only way that was practicable; that is, by giving them to an American Consul, and having them transmitted to the Department of State, and then to the clerk of the

court through the mail. This was not in absolute accordance with the procedure prescribed by the Texas statute; and it may be, under the strict rules which have been announced in that state, the depositions would have been suppressed. There could be no substantial reason for suppressing these depositions, based upon the fact that they went primarily to an officer of the United States, and then to the State Department, before being intrusted to the mails. No effort is made to attack the integrity of the depositions. The officer who took the depositions certified to them, and inclosed, sealed, and addressed them, as required by the Texas statute. When they were forwarded, Germany was at war. If they had been sent by mail in the ordinary way, they would have been exposed to hazards to which packages sent in the manner adopted were not exposed. They would have been liable to seizure and search, involving the opening of the envelopes containing them. A result would have been to make it questionable whether what came to the hands of the clerk was the depositions as they were when deposited in the mail in Germany. The failure strictly to conform to the statutory method of forwarding the depositions involved no injury to the plaintiff in error. The judgment under review is not to be reversed because of a ruling which was not harmful. Without reference to whether the District Court was correct in the construction given to the stipulation between the attorneys as to the taking of these depositions, we are of the opinion that the overruling of the motion to suppress them was not reversible error.

[5] It is insisted that the claim involved in this suit was a part of the claim set up in the former, and that the allowance therein of part of the claim and the rejection of the balance was a final adjudication of the whole. This would ordinarily be the effect. Considering, however, the language of the opinion, of the verdict, and of the judgment, it sufficiently appears that it was not the purpose to do more than determine that the claim now asserted had not then matured. The holding was that the right was inchoate, and that the cause of action had not yet arisen.

[6] Since the trial of this case the plaintiff has become an alien enemy. Upon the authority of the case of Owens v. Hanney, 9 Cranch 180, 3 L. Ed. 697, and Plettenberg v. Kalmon (D. C.) 241 Fed. 605, we hold that it is not necessary that the disposition of this appeal be held in abeyance. We will, however, under the terms of the act, known as the "Trading with the Enemy Act," of October 6, 1917, direct that the judgment be modified, to require that the amount of the judgment be paid to the clerk of the trial court, to be by him turned over to the Alien Property Custodian.

The judgment, modified as indicated, is affirmed.

Modified and affirmed.

Extract from the Minutes of February 22, 1918.

The judgment heretofore, on the 11th day of February, 1918, rendered in this case, is so amended as to be without prejudice to the rights of any one, not an alien enemy, to establish an interest, by proper proceedings in the District Court from which the appeal herein

was taken, in the judgment herein rendered, and to have the amount of such interest paid to such person, instead of to the custodian of alien enemy property.