## LIBERTY NAT. BANK OF NEW YORK v. BURR.

(District Court, E. D. Pennsylvania. January 17, 1921.)

### No. 7274.

Bills and notes ⊗⟳531—Judgment on bill payable in foreign currency computed on rate of exchange at time of judgment.

A judgment on a bill of exchange, drawn in London and payable there in pounds sterling, which judgment must be expressed in United States money, is to be computed, not by the par of exchange as fixed under the acts of Congress (Comp. St. §§ 6536, 6537), but by the rate of exchange at the time judgment is entered, on the principle, that such sum is the equivalent of the obligation at that time.

⊗⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Assumpsit by the Liberty National Bank of New York against Charles H. Burr. On rule for judgment for want of a sufficient affidavit of defense. Judgment order for plaintiff.

A. Allen Woodruff, of Philadelphia, Pa., for plaintiff.

Charles H. Burr, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This controversy suggests many academically interesting questions and raises some of great practical importance. The case concerns itself with bills of exchange drawn and accepted in London and made payable there. The promise was to pay in pounds sterling. The cause of action is based upon what by the acceptance is the equivalent of the promissory note of the defendant, payable in pounds sterling. Any judgment entered must be for a sum expressed in the money of account of the United States. The only controversy is over the fixing of this sum.

The acts of Congress (Comp. St. §§ 6536, 6537) which declare the value of pounds sterling expressed in dollars, cents, and mills, "in the construction of contracts payable in * * * pounds sterling," and imposing the duty upon the Director of the Mint to find, and the Secretary of the Treasury to proclaim, at stated periods, the value of foreign coins, suggest the thought of a translation of the word "pounds" into the dollars and cents thus defined to be its meaning. This purely legal concept of the situation is reflected in a number of the early cases. To thus merely translate pounds into dollars would be to enter judgment on the basis of what is called the par of exchange. We pass this thought by without further comment, because, among other reasons for so doing, neither party is asking that the sum for which judgment is to be entered should be so measured.

There is, however, another concept, reflected in the later cases, which is that the question is not one of translation or definition, but one of the measure of damages. This means the acceptance as a basis of calculation, not the par of exchange, but the rate. A promise to pay in pounds is kept by a payment in pounds, and hence, if there is a default, the promisee should be awarded in dollars the equivalent of that to which he was entitled in pounds. Rates of exchange are, however, so variable that they are not the same at the same place at different times, and ex vi termini they are not the same in different places at the same time. The acceptance of the doctrine that the prevailing rate of exchange controls makes important the question as of what date are we to find the rate of exchange. It is upon this the parties before us differ.

The history of any such transaction discloses several different dates, beginning with the date of the promise, and including that of maturity, demand, action brought, and the date of trial. The adjudged cases deal with transactions which are unlike in some features. These unlike features may affect the place of payment; a promise expressed in our own or a foreign money of account, or other points of difference. There are at least hints of distinction based upon the form and nature of the promise in respect to whether it takes the form of a promissory note or the acceptance of a bill of exchange. There are cases, also, of

a promise to pay in a currency which is what is called depreciated at the time of the making of the promise, or is such at a later date. There are also cases which are sui generis, such as the Confederate money cases.

The English cases must be read with the thought in mind that they are considered from the viewpoint of the fixed idea of the absolute stability of the pound sterling, and that it is an unvarying standard of value. Bills drawn and payable in one state, payment of which is enforced by judgment in another, are foreign bills, and there may be a rate of exchange in favor of one locality and against the other; but such a bill involves no feature of any difference in the subject-matter of the promise in which may be involved the concept of a promise of the delivery of a commodity and damages awarded in money.

The Pennsylvania cases supply us with a very meager discussion of the principles on which the rulings made rest. Lee v. Wilcocks, 5 Serg. & R. (Pa.) 48, is ruled on the ipse dixit of Chief Justice Gibson that, in cases of promises to pay in foreign money, it was the settled rule to base a finding of the sum recoverable upon the rate of exchange prevailing at the trial. Wood v. Kelso, 27 Pa. 241, was the case of a promise made in one state to pay a sum of money in dollars in another state, and an action brought in the state in which the promise to pay was made. The plaintiff was given the benefit of the rate of exchange. The ruling, however, partakes too much of the nature of a rescript to be of much aid to us.

Stewart v. Salamon, 94 U. S. 434, 24 L. Ed. 275, was a proceeding to foreclose a mortgage upon real estate situate in Georgia. The mortgage, however, was given to secure the payment of certain promissory notes which are treated (although there is no direct statement of the fact) as if also made and payable in Georgia. The promise was to pay a sum of money expressed in dollars. The finding was that the note was "originally solvable in Confederate currency." The nominal value of this currency we assume was the same as that of the money of the United States. It had no actual value at the time of suit brought. Any judgment entered must of course be expressed in the money of the United States. It was held that the sum for which judgment was entered should reflect the value in the money of the United States of the sum mentioned in the promise in Confederate currency at the time the promise was made.

We are unable to see that this ruling is of much, if of any, value to us in determining the questions now presented. Rives v. Duke, 105 U. S. 132, 26 L. Ed. 1031, is to the same effect, as is also Effinger v. Kenney, 115 U. S. 566, 6 Sup. Ct. 179, 29 L. Ed. 495. The same comment applies to all of this class of cases.

Counsel have cited a number of other cases ruled in different jurisdictions. These we have had no opportunity to examine. There would seem, however, to be a lack of uniformity among them. We are, in consequence, taken back to Lee v. Wilcocks as the only light judicially shed upon the question. It is to be regretted that we have no statement from Chief Justice Gibson of the principle upon what the terms the "settled rule" is based.

It would seem to logically follow, as already intimated, that if the controlling principle is that of the mere translation of the foreign word, by which the sum to be paid is indicated, into a word in our language which is the equivalent of the foreign word, as with us defined by law, that when the promise is reduced to judgment, that the sum of the judgment should be determined at what is called the par of exchange. It would also seem that, if the controlling principle is to view a promise to pay a sum expressed in words of the money of account of another nation as if it were a promise to deliver a commodity, the sum for which the judgment is rendered should be based upon the rate of exchange prevailing at the time of the breach, or, in other words, the maturity of the note or other obligation containing the promise. If the promise is the payment of a sum expressed in a money of account, which had a meaning at the time the promise was made, but none at the time the judgment was rendered, then the sum expressed in the judgment is to be determined by the sum expressed in the same terms which was in the minds of the parties at the time the promise was made, or, in other words, the rate of exchange prevailing at that time.

It is evident that the rule of which Chief Justice Gibson speaks is one not based on any of the principles of which we have just spoken. It may be based upon the principle, already stated, that a promise to pay a sum of money, expressed in the terms of any money of account, is kept by payment in that money. Putting the same thought in the concrete, a man who promises to pay £1,000 sterling keeps his promise if he pays £1,000 sterling at the maturity of the note or other obligation which he has given, and although he does not keep his promise to pay the note at maturity, if he pays it at a later date, he none the less meets his obligation if he later pays the £1,000, with interest thereon for the delay. If, instead of paying in the same money of account, he pays in a different money, he none the less keeps his promise, if the money in which he pays is the equivalent in value of that which he promised to pay. This means he must pay at the rate of exchange prevailing at the time of payment. Applying this principle to the determination of the sum for which the judgment should be entered, it would be entered in accordance with the ruling in Lee v. Wilcocks. The recovery of judgment for a debt may not always be the practical equivalent of receiving payment of that debt; but it is easy to understand that one may be the legal equivalent of the other, and practically works out the same result if and when the judgment is eventually paid. We say this because the plaintiff in the judgment receives, plus interest, precisely what he would have received, had the promise of the debtor been redeemed at the time the judgment was entered.

This is a rule for judgment for want of a sufficient affidavit of defense. In entering judgment on the basis of the rate of exchange prevailing at the time the judgment is entered, we follow the rule laid down in Lee v. Wilcocks, which we accept as the established rule in Pennsylvania. It meets the test applied in some of the cases in other jurisdictions that the amount of the judgment entered should be the equivalent of what the plaintiff would recover, if suit were brought in the jurisdiction in which the obligation was assumed and in which it was pay-

able. It is open to the criticism, suggested in other cases, that if the rate of exchange prevailing at any other time than the date of maturity is taken, there may be a difference in the amount for which judgment is entered on obligations which differ only in respect to the time the cases are brought to trial. Whatever inequality there is in this is due to the inherent nature of any of the known mediums of exchange. Every such medium varies in purchasing power from time to time and in different places. This variation is crystallized in the rate of exchange. The result is that two debtors, paying the same nominal sum expressed in any money of account, may pay different sums expressed in the purchasing power of that money, if the debts are paid at different times. However regrettable this may be, the result has thus far been found to be practically unavoidable.

We have treated the rule as intended to raise in limine the question of law as to the basis upon which the amount for which judgment should be entered is to be determined. Whether the record is in such shape as that the court can find for what sum judgment should be entered in accordance with this opinion is not clear. To enable the parties to meet whatever difficulty there may be in arriving at the proper sum, leave is granted to the plaintiff to move for judgment in a sum which is based upon the rate of exchange prevailing at the time judgment is entered, if the parties can agree upon the correct amount. If they cannot, the cause is set down for reargument, so that any technical questions, such as we have suggested, may be determined. We have decided for the parties the question which we understand we have been asked to decide. The question is at this time of very great practical importance, owing to the great difference in the rates of exchange prevailing at different times. The changes, even within short periods, have been great.

We wish, also, to express our appreciation of the very helpful oral arguments and briefs submitted in support thereof.