## PAGE v. LEVENSON et al.

(District Court, D. Maryland. May 26, 1922.)

No. 1134.

Sales ☞384(1)—Rate of exchange applicable, where recovery is measured in foreign money, stated.

In an action for breach of contract against a buyer of goods, to be delivered in France and paid for in francs, the measure of plaintiff's recovery *held* to be such sum in dollars as would purchase the number of francs awarded as damages, at the rate of exchange current at the time of the breach.

At Law. Action by E. Page against Samuel Levenson and others, copartners trading as the Textile Mills Products Company. Trial to court. Judgment for plaintiff.

Hershey, Machen, Donaldson & Williams, of Baltimore, Md., for plaintiff.

Richard B. Tippett & Son, of Baltimore, Md., for defendants.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROSE, District Judge. The plaintiff, a citizen of France, makes tapestries; the defendants, citizens of Maryland, trading as the Textile Mills Products Company, deal in them. In the spring of 1920, the defendants gave plaintiff an order to make up some of his wares for them. For an agreed price in francs, he was to deliver them at Roubaix, near Lille. A part of them were there duly delivered, and by forwarding agents sent to the defendants in Baltimore. When the goods reached here, the defendants at first delayed taking them, and then refused to accept them. The balance, though manufactured in accordance with the contract, were never sent to this country, as defendants gave notice that they would not receive them.

The case was tried before me, a jury having been waived. So far as the merits go, it suffices to say that the evidence justifies, and in my view, sitting as a jury, requires a finding that the defendants broke their contract, to the plaintiff's damage, in the sum of 84,036.65 francs, plus $133.92 in American money, which he was compelled to expend for them. In the exercise of the discretion of a jury, I am, in view of the circumstances, of the opinion that interest should be added.

Here I might stop, were it not that an American court cannot give a judgment in francs, and therefore must necessarily fix some date for ascertaining their value in dollars. At the time of the trial, a franc was worth 9.11 cents, which was about its value at the time the contract was entered into; but, when the tapestries shipped to this country should have been paid for, it was worth but 6½ cents, and early in January, 1921, when the defendants definitely refused to accept those still in France, it had fallen to 6 cents. The result is that, after adding interest, the plaintiff is entitled to a verdict for $8,526.69, if he is to receive a sum sufficient to give him what, on the date of trial, was the equivalent of the francs to which he was entitled, and but $5,924.80, if he is given only such sum as would, on the respective dates of the breaches, have equaled the exchange value of the French money which should then have been paid to him. The difference is $2,601.90, or 44 per cent. of the entire amount due him, if defendants' contention on this point be accepted.

There is thus presented a striking illustration of the practical importance which the widely varying depreciations and fluctuations in the currencies of different countries have recently given to problems of exchange, which, before the World War, received but slight and occasional consideration. Within the last 12 months in England, an English bank, which in June, 1914, borrowed from a similar Russian institution, 750,000 roubles, then worth upwards of £78,000 sterling, has been permitted to extinguish the debt by paying the original number of roubles in issues of the present government of Russia, and which could be obtained for £25 or less. British Bank for Foreign Trade, Ltd., v. Russian Commercial & Industrial Bank, 38 Times L. R. 65. Naturally enough, under such conditions, controversies as to the time at which the value of the foreign money should be calculated have greatly increased in number.

The specific question with which we have to deal is the case of a suit brought in the courts of one country upon a contract which re-

quired the payment in the foreign country in the currency of the latter. The point has been discussed for centuries, apparently without there ever having been a time when all the doctors of the law were of one mind as to it. Story's Conflict of Laws, § 308 et seq. The date of the contract, of its breach, of the bringing of suit, and of the trial or judgment, have each been suggested as the time at which the conversion from one currency to another should be made. As late as a decade ago Mr. Westlake taught:

"That a debt payable abroad being recovered in England, the judgment must be for so much English money as, if remitted to the country where the payment ought to have been made at the rate of exchange *current at the time the judgment is recovered*, will there produce the amount of the debt, with any interest or damages included in the judgment." Westlake's Private International Law (5th Ed.) § 226.

The re-examination of previously decided cases forced by recent events has shown that the existing authorities scarcely justified so positive a statement. However that may be, there can be no question that it is not now the law of England, if it ever was. The recent cases have made it clear that in England's courts the value of foreign money will be ascertained, not as of the date of judgment, verdict, or decree, but as of the time of breach. Owners of S. S. Celia v. Owner of S. S. Volturno, Law Reports [1921] 2 App. Cases, 544, 37 Law Quarterly, 38. The latest English case which has come under my observation repudiates the distinction once suggested between a judgment for debt and a judgment for damages. Société Des Hotels Du Touquet Paris Plage v. Cummings, Law Reports [1921] 3 K. B. 459. It is possible that there may be some exceptions to the universality of the rule, but, if so, they are not applicable to the instant case. 37 Law Quarterly, supra.

In this country there has always been, and still is, a wide divergence of opinion. What is now the English doctrine has long been that of the courts of some of our states. Simonoff v. Granite City National Bank, 279 Ill. 248, 116 N. E. 636; Butler v. Merchant (Tex. Civ. App.) 27 S. W. 193; Katcher v. American Express Co., 94 N. J. Law, 165, 109 Atl. 741; Grunwald v. Freese, 4 Cal. Unrep. 182, 34 Pac. 73. It is ably advocated by the learned writer of a recent article in the Columbia Law Review (March, 1922). In Birge-Forbes Co. v. Heye, 251 U. S. 317, 40 Sup. Ct. 160, 64 L. Ed. 286, the plaintiff sued to secure certain sums which he had, for the account of the defendant, paid in Germany in marks. The case arose before the World War began, and was tried below while it was still raging. The court approved the rating of the mark at par, "in the absence of evidence that it had depreciated at the time of the plaintiff's payments." It appears from the opinion of the Circuit Court of Appeals for the Fifth Circuit (248 Fed. 640, 160 C. C. A. 540), that the nominal value or par of the German mark was 23.8 cents, but at the time of trial it was but 18⅛ cents. The court said:

"The purpose of the judgment is to make whole the plaintiff for the amount which he paid out in discharging the obligation of his principal. The evidence failing to disclose any depreciation of the German mark at the time of

this payment, the assumption should be that the value of the mark was at that. time the nominal value, and the judgment should be predicated upon this. value."

On the other hand, there are a number of earlier and some recent American cases which hold that where, as between the parties, the payment should have been made in foreign money, the judgment should be for such sum in our currency as would, at the time it was rendered, produce the amount of foreign money to which the plaintiff is entitled. Lee v. Wilcocks, 5 Serg. & R. (Pa.) 48; Scott v. Hornsby, 1 Call. (Va.) 41; Marburg v. Marburg, 26 Md. 9, 90 Am. Dec. 84; Cropper v. Nelson, 6 Fed. Cas. 872, No. 3417; Smith v. Shaw, 22 Fed. Cas. 659, No. 13107; Sirie v. Godfrey, 196 App. Div. 529, 188 N. Y. Supp. 52; The Saigon Maru (D. C.) 267 Fed. 882; The Hurona (D. C.) 268 Fed. 910; Liberty National Bank v. Burr (D. C.) 270 Fed. 251.

Occasional hardships and injustices are the necessary results of ap- plying one rule to all cases. Some of the arguments which can be made against the English doctrine are obvious enough. It is not always easy to fix the precise time of the breach. Where the suit is for a tort, is the foreign money to be turned into that of the forum as of the time when the wrong was done, or as of the dates when the amount of the respective items of damage were ascertained or liquidated? In some cases it will lack mutuality, and may even give an advantage to the party in fault. In the instant case, the breaches took place about No- vember 1, 1920, and January 5, 1921. Suit was not brought until September 29, 1921. At any time before proceedings were instituted, the defendants could have tendered the plaintiff the exact amount of francs due him, no matter how greatly, between the breach and the tender, their value, as measured in American money, had fallen. Very possibly that has often been done. It has been sometimes attempted after legal proceedings have been instituted. Société Des Hotels Du Touquet Paris Plage v. Cummings, supra.

To avoid such possibilities, it has sometimes been suggested that the date at which the foreign money should be valued is that at which suit was brought. Moreover, it is forcibly urged that the only reason why the courts do not give the plaintiff precisely what belongs to him is that they lack the power to enter a judgment in any currency except their own. If they could give him a judgment in francs, marks, lires, or roubles, they would do so. Why not then enter up for him one for so many pounds or dollars as will, on the day the judgment is rendered, buy for him the precise number of francs, marks, lires, or roubles to which he is admittedly entitled? Probably no altogether satisfactory answer can be given to this argument, except, perhaps, that in actual practice greater hardship may be inflicted by fixing the day of trial as that upon which the conversion of the currency should be made, as when, in the case already cited, it was held that the English debtor had the right, by tendering Soviet roubles, to redeem its bonds held by a third party as security for the repayment of the gold roubles once lent it. British Bank for Foreign Trade, Ltd., v. Russian Commercial & Industrial Bank, supra. To take any other date than that of the breach as that at which the conversion is to be made will lead to in-

tentional obstruction of speedy trials or make the rights of the parties dependent upon all sorts of accidental occurrences.

For illustration, the case at bar was submitted more than a month ago. The importance and difficulty of the question involved, and the pressure of almost continual trial work, caused delay in deciding it. During the last three years, a shorter time has often witnessed a material rise or fall in the rate of exchange. Much might be said in favor of taking the date of the contract as that on which the conversion should be made, for then each party bargains with knowledge of what the consequences of a breach will be. If that were the rule with reference to contracts, doubtless, in cases of tort, the time at which the wrong was committed would be that at which one currency should be turned into the other. That now appears to be the English rule as to torts, because that is the date at which the breach of duty occurred. In modern times, however, the suggestion that the date of contract should control appears to have had few or no advocates.

It must be borne in mind that no one rule will in this matter in all cases work well. It is far better to have one than many. The House of Lords has settled the law for England. With its view many of the American courts of last resort concur. It would seem the part of wisdom to accept it, even if a federal court is free to do otherwise, and that is perhaps doubtful. It may be true that the point with which we are now concerned may not have been the one most prominent in the minds of court or counsel in Birge-Forbes Co. v. Heye, supra; but it is certain that the attention of both was directed to the question, and it was decided that, when a German in Bremen had paid marks and was seeking in the American courts to recover for that payment, the marks were to be turned into dollars as of the date of the payment in Germany, and not as that of the date of trial. That disposition of that case was doubtless the more equitable. It is of course possible that the Supreme Court, in the brief sentence with which it disposed of the question, did not intend to promulgate a general rule; but it did not say so, and there does not appear to be any sufficient reason why a lower federal court should attempt to distinguish the facts of that case from those of the one at bar, even if it had the right to do so.

It follows that the plaintiff may recover only $5,924.80, the aggregate amount of the sums, with interest, which at the time of the several breaches would have been the equivalent of the francs to which he was entitled.