OLGA I. HOPPE, Respondent, *v.* RUSSO-ASIATIC BANK, Appellant.

First Department, March 17, 1922.

Banks and banking — action to recover money deposited to credit of plaintiff's assignor in defendant bank — deposit made in Paris branch for account of plaintiff in London branch — London branch had no right to detain money awaiting instructions from Moscow branch — legal status of plaintiff shown — act of attorney in assigning claim to plaintiff ratified — secondary evidence of power of attorney proper where impossible to secure original power from Russia — damages — measure of damages is sum sufficient to purchase pounds sterling at time of refusal plus interest from that date to entry of judgment.

The plaintiff's assignor, for the purpose of establishing a credit in the defendant's London branch, purchased pounds sterling in England and, because of the statutory regulations then existing in Russia, was compelled to put the transaction through the Moscow branch of the defendant. On proper authority the London branch paid to a third person the amount involved in the present action to cover the purchase price of merchandise purchased by the plaintiff's assignor from said third person. Through some misunderstanding said third person refunded the money to defendant's Paris branch by a check accompanied by the following letter: " Reimbursement of frs. 559,000 for the account of Messrs. B. B. Hoppe & Co. of Moscow. Referring to your payment of the 12th instant of frs. 571,200 — by order and for account of Messrs. B. B. Hoppe & Co. of Moscow, we have the honor to reimburse to you today for the account of that same Moscow house the sum of frs. 559,000 — of which please have its account credited by your London office, of which we have informed Messrs. B. B. Hoppe & Co. of Moscow by telegraph." Said third person received from the Paris branch a receipt reciting that it had received from the third person to order of the plaintiff's assignor " for account of Russo-Asiatic Bank of London " the sum specified. The Paris branch of the defendant then wrote the defendant's London branch stating that it had credited the London branch with the amount specified " for the credit of the account with you of " the plaintiff's assignor. The defendant's London branch refused, on direction of the plaintiff's assignor, to repay the said sum of money to said third person on the ground that it had credited the amount to the Moscow branch and could not pay it until so ordered by that branch.

*Held,* that the Paris branch of the defendant received the money on account of the plaintiff's assignor and the London branch was credited with that amount and the plaintiff's assignor was the only one entitled thereto. In accepting the money herein upon the conditions expressed by the third person, which sent the money to the Paris branch, defendant acquiesced in the arrangement and it may not now be heard to urge that it had a right to detain the money until the Moscow branch of the defendant would advise it what to do with it; the acceptance of the money from the third person constituted a new and independent transaction originating with the Paris branch.

The legal status of the plaintiff's assignor, a Russian concern, in the nature of a special partnership, was sufficiently established not only by a member of that concern but by an attorney who was thoroughly familiar with the Russian law.

Even though the assignment to the plaintiff, who was the widow of the principal owner of the Russian concern, of the claim in question was not shown to have been executed by a person having proper authority, said assignment was ratified not only by the plaintiff, who was practically the owner of the business, but also by all the other persons interested in the concern, and said ratification necessarily related back to the date when the assignment was executed to the plaintiff in behalf of the firm.

It was not error for the court to permit the introduction of secondary evidence to prove the power of attorney possessed by the one who assumed to assign the claim to the plaintiff, since it was shown that at the time of the action it was practically impossible to get the original power of attorney out of Russia on account of the then political conditions there prevailing.

Furthermore, as the only interest that the defendant could have in the assignment is that it may be absolutely protected thereunder from any further action upon the claim in suit, it cannot complain, since every member of the plaintiff's assignor has expressly recognized the power of attorney, and there is no question of the solvency of the plaintiff's assignor.

The plaintiff was entitled to recover a sum sufficient for the purchase of the pounds sterling at the time when the defendant refused to honor the demands of the plaintiff's assignor, together with interest from that date to the time of the entry of judgment.

APPEAL by the defendant, Russo-Asiatic Bank, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of July, 1921, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 11th day of July, 1921, denying defendant's motions to reopen the case, to be allowed to introduce further proof, and to amend the amended answer.

*Evarts, Choate, Sherman & Leon* [*Joseph H. Choate, Jr.*, of counsel; *Maurice Leon* with him on the brief], for the appellant.

*White & Case* [*Joseph M. Hartfield* of counsel; *Vermont Hatch* with him on the brief], for the respondent.

GREENBAUM, J.:

The complaint sets up two causes of action. The first alleges the residence of the plaintiff in this State; that defendant is a Russian banking corporation; that a firm known as B. B. Hoppe & Co. was of the nature of a corporation or special partnership organized and existing under the laws of Russia; that on January 15, 1918, defendant at its Paris branch received from the Societé des Forces Motrices et Usines de l'Arve (hereinafter called the " French company ") a check on the National Bank of Credit in Paris for the sum of 559,000 francs, the proceeds of which it agreed to pay to B. B. Hoppe & Co., or upon its order, at defendant's London office; that on the 18th day of January, 1918, defendant collected this check; that on or about January 30, 1918, a demand was made for the payment of the proceeds thereof in pounds sterling upon defendant's London branch; that the defendant refused to make such payment, and that on May 22, 1919, the cause of action was assigned by Hoppe & Co. to the plaintiff.

The second cause of action repeats most of the allegations of the first cause of action, and sets up that, on or about January 18, 1918, the defendant received for the use of Hoppe & Co. the

sum of 559,000 francs, which, although duly demanded, defendant has refused to pay.

The defendant's amended answer admits the incorporation of the defendant and its maintenance of branches in various cities in Europe, including London and Paris. It further admits that on or about January 15, 1918, defendant received from the French company a check on the National Bank of Credit in Paris for 559,000 francs, and, by failure to deny, admits that it collected this check on or about the 18th day of January, 1918.

With respect to the second cause of action, the defendant denies that it received any money to or for the use and benefit of B. B. Hoppe & Co., although it expressly admits having received 559,000 francs from the French company on or about January 18, 1918.

The case went to trial on the second cause of action.

The issues are really within a very narrow compass and the facts are practically undisputed. In its final analysis the case comes down to this: The firm of B. B. Hoppe & Co. was a Russian concern in the nature of a special partnership. One B. B. Hoppe was practically the owner of the business, excepting that members of his own family had interests therein as depositors, as they are termed in Russia, which means that they were like special partners in this State, and that they were entitled to receive only seven and one-half per cent interest on their respective investment or deposits. Upon the death of Hoppe, his wife, the plaintiff, succeeded to all his rights in the business. A son, Edgar B. Hoppe, had practical charge of the management of the affairs of the business at the time when the transactions under discussion occurred. It appears that in July or August, 1917, it became necessary for B. B. Hoppe & Co. to open a credit, by reason of a contract which it had made for the purchase of a large quantity of chlorate of potash.

As a matter of fact B. B. Hoppe & Co. had no account with the Russo-Asiatic Bank in Russia, excepting that, when the firm desired to buy the pounds sterling in England, it was obliged to secure the consent of the Chancellor of Credit in Petrograd to effectuate the purchase, through the defendant bank in Moscow.

On August 9, 1917, defendant's London branch advised the French company, from whom B. B. Hoppe & Co. had agreed to purchase the chlorate of potash, that it was prepared until further notice to pay that company the sum of £21,000 against bill of lading and invoice of goods to be shipped to Archangel. This advice stated that payment was to be made for the account of Messrs. B. B. Hoppe & Co. of Moscow. On December 14, 1917,

the London branch of the defendant received a cable from defendant's Moscow branch, asking the former to cancel the documentary credit opened by the Moscow branch, and notifying the London branch to pay to the French company for account of B. B. Hoppe & Co. the £21,000 against the receipt merely of the French company. Thereupon on December 18, 1917, the London branch notified the French company canceling their advice of August 9, 1917, stating: "We are instructed to pay you against receipt only the sum of twenty-one thousand pounds. Kindly therefore return to us the attached form of receipt in duplicate duly signed with instructions as to how we are to pay you the above money." On January 7, 1918, the London branch directed the Paris branch to pay the French Company 571,200 francs for the account of B. B. Hoppe & Co., which it did on January 12, 1918.

On January 15, 1918, the French company wrote to the defendant's Paris branch a letter as follows: "Reimbursement of frs. 559,000 for the account of Messrs. B. B. Hoppe & Co. of Moscow. Referring to your payment of the 12th instant of frs. 571,200 — by order and for account of Messrs. B. B. Hoppe & Co. of Moscow, we have the honor to reimburse to you today for the account of that same Moscow house the sum of frs. 559,000 — of which please have its account credited by your London office, of which we have informed Messrs. B. B. Hoppe & Co. of Moscow by telegraph."

It is undisputed that a check of the French company for 559,000 francs drawn on the National Bank of Credit of Paris accompanied this letter, and that in exchange therefor the Paris branch of the defendant issued a receipt in the following form:

" RUSSO-ASIATIC BANK<br>
" PARIS BRANCH

" [SEAL]　　　　　　　　　　　　　　　　　frs. 559,000

" Received from the Societé des Forces Motrices & Usines de l'Arve by order of Messrs. B. B. Hoppe & Co. of Moscow for account of Russo-Asiatic Bank of London the sum of Five hundred fifty-nine thousand francs in a check on the National Bank of Credit, for which credit after collection. For which receipt in duplicate is only good as to one.

" Paris, the 15th of January, 1918.

" RUSSO-ASIATIC BANK,<br>
" PARIS BRANCH.

" No. 2,665　　　　　　　　　　　[Two illegible signatures]."

On January 16, 1918, the Paris branch of defendant wrote to defendant's London branch a letter in which it stated that it had credited the London branch with 559,000 francs, " *value January 16,*

payment of the Societé des Forces Motrices & Usines de l'Arve (merged with the Compagnie des Produits Chimiques d'Alais & de la Camargue) for the credit of the account with you of Messrs. B. B. Hoppe & Co. of Moscow.'' (Italics ours.)

There is not a shadow of doubt that the Paris branch received the money on account of B. B. Hoppe & Co., and that the London. house was credited with the amount thereof, and that the only one entitled thereto was B. B. Hoppe & Co. In accepting the 559,000 francs upon the conditions expressed by the French company, which sent that sum to the Paris house, defendant acquiesced in the arrangement, and it may not now be heard to urge that the defendant had a right to detain the money until the Moscow branch of the defendant would advise it what to do with it. The fallacy of defendant's position is apparent. The acceptance of the moneys from the French company constituted a new and independent transaction originated with the Paris branch.

As throwing a side light upon defendant's reason for its extraordinary action, it may be stated that at the times when these transactions took place, the Bolshevik government had come into power and seized and taken possession of all the banks in Russia.

The defendant, however, contends that the plaintiff had failed to prove the legal status of B. B. Hoppe & Co. That was amply established upon the trial, not only by Edgar B. Hoppe, but by an attorney who was thoroughly familiar with Russian law, and who testified what the Russian statute was under which the business of B. B. Hoppe & Co. was organized. The assignment of the claim of B. B. Hoppe & Co. to Olga I. Hoppe, wife of the deceased, who succeeded to practically all the ownership of the assets of B. B. Hoppe, is also assailed.

In considering the attack upon the assignment to the plaintiff, it is to be observed that it was executed on May 22, 1919, prior to the commencement of the action. The evidence shows, as heretofore stated, that Edgar B. Hoppe was the manager in active control of the business of B. B. Hoppe & Co. Assuming for the moment that there was no express power of attorney granted to Edgar B. Hoppe to execute the assignment to the plaintiff, there is no doubt that there was a complete ratification of his act under an assumed power, not only by the plaintiff, who was practically the owner of the business, but also by all the depositors who ratified and affirmed the action of Edgar B. Hoppe, which necessarily related back to the date when he executed the assignment to plaintiff in behalf of the firm.

The ratification of an invalid assignment may relate back and

invest title in the assignee from the time of the original assignment.　(5 C. J. 940.)

It is well settled that a principal may ratify an agent's act subsequent to a previously unauthorized act, and such ratification renders the act good from the beginning, except where rights of third persons have intervened between the act and the ratification.　(31 Cyc. 1283; *Commercial Bank of Buffalo* v. *Warren*, 15 N. Y. 577; *Long* v. *Poth*, 16 Misc. Rep. 85.)

As to the motive of the assignor in making the assignment or the consideration given therefor, it is well settled (5 C. J. 940) that " it is of no importance to the debtor what motives influence the assignor in making the assignment," whether it was for the " purpose of more convenient enforcement　*　*　*　or to avoid an incapacity of the assignor to bring an action."　(See, also, *Hadden* v. *Dooley*, 92 Fed. Rep. 274, 280; *Osborne* v. *Hughes*, 128 App. Div. 128; *Sheridan* v. *Mayor*, 68 N. Y. 30, and *Weis* v. *Levy*, 106 App. Div. 500.)

The appellant also contends that the plaintiff should have submitted the original power of attorney which Edgar B. Hoppe testified had been given to him to execute the assignment.　It was shown that the original power of attorney was left with other papers in Moscow, and that it was practically impossible to get them out of Russia on account of the then political conditions there prevailing.

We are of opinion that under the circumstances the court properly permitted the introduction of secondary evidence in proof of the assignment.　It should be borne in mind that the only interest which the defendant can have in the assignment of the claim to the plaintiff is that it may be absolutely protected thereunder from any further action upon the claim in suit.　But, inasmuch as every member of the firm of B. B. Hoppe & Co. has expressly recognized the power of attorney of Edgar B. Hoppe, and as there is no question of the solvency of B. B. Hoppe & Co. involved, it is apparent that the defendant is amply protected.

We are also of opinion that the measure of damages adopted by the learned trial justice was correct.　Plaintiff was entitled to recover a sum sufficient for the purchase of the pounds sterling at the time when the defendant refused to honor the demands of B. B. Hoppe & Co. together with interest from that date to the time of entry of judgment.　This was the rule recognized in the somewhat similar case of *Gross* v. *Mendel* (171 App. Div. 237; affd., 225 N. Y. 633), in which the memorandum of the Court of Appeals at page 633 reads as follows:　" The Appellate Division

held as a matter of law that all of said bills of exchange were to be converted into money of the United States at the rate of exchange between Leipzig and New York prevailing at the time of maturity of each of said bills of exchange."

The only remaining question that is worthy of discussion refers to the so-called separate defense and counterclaim of the defendant.

It seems to us that the court properly dismissed both the defense and the counterclaim. The escrow agreement set up in the answer was merely in the nature of an accord, but without satisfaction. It was conditioned upon obtaining the approval of the English government. It is well settled that accord without satisfaction is no defense. A tender of performance is insufficient to operate as a bar to the prosecution of an action. (*Kromer* v. *Heim,* 75 N. Y. 574; *Reilly* v. *Barrett,* 220 id. 170; *Moers* v. *Moers,* 229 id. 294.)

The judgment and order are affirmed, with costs.

Clarke, P. J., Laughlin, Smith and Merrell, JJ., concur.

Judgment and order affirmed, with costs.