# DEUTSCHE BANK FILIALE NURNBERG *v.* HUMPHREY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 224. Submitted October 12, 1926.—Decided November 23, 1926.

1. An obligation in terms of the currency of a country takes the risk of currency fluctuations and whether creditor or debtor profits by the change the law takes no account of it. P. 519.
2. In an action brought here on a debt arising from a deposit made in Germany and payable there on demand, in marks, it is erroneous to translate the amount due into dollars at the rate of exchange

existing when demand was made, the mark having depreciated thereafter. P. 519.

7 F. (2d) 330, reversed.

CERTIORARI (269 U. S. 547) to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court in a suit brought by Humphrey against the Deutsche Bank, under the Trading with the Enemy Act, to collect a debt contracted and payable in Germany.

*Mr. Amos J. Peaslee* for the petitioner, submitted.

*Messrs. William Grant, William P. Hubbard,* and *John B. Zimdars* for the respondent, submitted.

*Solicitor General Mitchell* filed a brief on behalf of the Alien Property Custodian and the Treasurer of the United States.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit to reach and apply to a debt due from the Deutsche Bank Filiale to Humphrey money seized by the Alien Property Custodian and paid into the Treasury of the United States. Humphrey, an American citizen, deposited money, payable on demand, in a German Bank in Germany, and demanded it, as the Courts have found, on or about June 12, 1915. The money was not paid, and this suit was begun on July 9, 1921, under the Trading with the Enemy Act; October 6, 1917, c. 106; 40 St. 411. The debt was a debt of German marks. The Courts below held that it should be translated into dollars at the rate of exchange existing when the demand was made. 7 Fed. (2d) 330. The value of the mark fell after that date and a writ of certiorari was granted by this Court to determine whether the time fixed for the translation into dollars was correct. 269 U. S. 547.

In this case, unlike *Hicks* v. *Guinness,* 269 U. S. 71, at the date of the demand the German Bank owed no duty

to the plaintiff under our law. It was not subject to our jurisdiction and the only liability that it incurred by its failure to pay was that which the German law'might impose. It has incurred no additional or other one since. A suit in this country is based upon an obligation existing under the foreign law at the time when the suit is brought, and the obligation is not enlarged by the fact that the creditor happens to be able to catch his debtor here. *Davis* v. *Mills,* 194 U. S. 451. See *Western Union Telegraph Co.* v. *Brown,* 234 U. S. 542. We may assume that when the Bank failed to pay on demand its liability was fixed at a certain number of marks both by the terms of the contract and by the German law—but we also assume that it was fixed in marks only, not at the extrinsic value that those marks then had in commodities or in the currency of another country. On the contrary, we repeat, it was and continued to be a liability in marks alone and was open to satisfaction by the payment of that number of marks, at any time, with whatever interest might have accrued, however much the mark might have fallen in value as compared with other things. See *Société des Hôtels le Touquet Paris-Plage* v. *Cummings,* (1922) 1 K. B. 451. An obligation in terms of the currency of a country takes the risk of currency fluctuations and whether creditor or debtor profits by the change the law takes no account of it. *Legal Tender Cases,* 12 Wall. 457, 548, 549. Obviously, in fact a dollar or a mark may have different values at different times but to the law that establishes it it is always the same. If the debt had been due here and the value of dollars had dropped before suit was brought the plaintiff could recover no more dollars on that account. A foreign debtor should be no worse off.

There has been so little discussion of what we regard as the principles that ought to govern this question that

we refrain from citing the many cases that have touched
upon it and content ourselves with stating what seems
to us the proper rule, only adding a few words as to
Sutherland v. Mayer, 271 U. S. 272. That case concerned
the settlement of accounts of a German partnership hav-
ing one member in America, and dealt with his claim to
funds in America in the hands of the Boston branch until
seized by the United States. With regard to the Boston
partner's lien upon that fund the partnership contract
fairly might be regarded as subjecting the German part-
ners to American law and warranting a settlement as of
the date when it first became legal after the war, taking
the mark at its value at that time. *Hicks v. Guinness,*
269 U. S. 71. It was held that in an equitable proceed-
ing where it was hard to lay down any logical rule sub-
stantial fairness warranted that result, referring to cases
that arose after the Civil War. Here we are lending our
Courts to enforce an obligation (as we should put it, to
pay damages;) arising from German law alone and ought
to enforce no greater obligation than exists by that law
at the moment when the suit is brought.

*Decree reversed.*

MR. JUSTICE SUTHERLAND, dissenting.

It is well settled, I think, that, where the cause of
action for a tort or breach of contract to deliver goods
accrues in a foreign country and is sued on here, the time
for fixing the value of foreign money in dollars is the date
when the wrong was committed or the breach occurred.
This Court has recently applied the same rule to the case
of a simple debt *payable in this country,* *Hicks v.
Guinness,* 269 U. S. 71, and to the settlement of partner-
ship accounts, where the partnership funds were partly
here and partly abroad, *Sutherland v. Mayer,* 271 U. S.
272. The majority opinion rests upon the distinction that

the debt upon which recovery here is sought was *payable
in Germany*. The distinction, I think, is fallacious, and
proceeds from a very narrow view of the principles applied
in *Hicks* v. *Guinness* and *Sutherland* v. *Mayer*.

It is said that when the bank failed to pay on demand,
its liability was fixed by German law at a certain number
of German marks, and in marks only; that it continued to
be a liability in marks only and was open to satisfaction
by the payment of that number of marks at any time,
however much the mark might have fallen in value as
compared with other things; citing *Société des Hôtels le
Touquet Paris-Plage* v. *Cummings*, [1922] 1 K. B. 451.
And that, of course, is true if the payment be made *in
Germany*, where marks remain legal tender at all times
irrespective of their fluctuating value when measured by
their purchasing power or by the money of other countries.
And this is all that is held in *Société des Hôtels, etc.* v.
*Cummings, supra*. See pp. 458, 461, 464. It, likewise,
may be assumed that if suit had been brought in Ger-
many, a judgment at any time for the number of marks
called for by the obligation would have satisfied the re-
quirements of German law, since there marks were not
only the things to be delivered but the lawful money with
which to satisfy a breach of an obligation to deliver them.
But if suit be brought in a court of this country, where
marks are not money but things only, the judgment must
be in dollars and cannot be in marks any more than it
could be in wheat if the broken contract related to that
commodity.

The view that the judgment date should govern puts
undue emphasis upon the character of the thing to be
delivered and ignores completely the all-important ele-
ment of the time when the delivery should have been
made. In respect of that element, I see no good reason
for making a distinction between marks and wheat. In
either case, if suit be brought in Germany, the injured

party is entitled to recover the amount of his loss in marks and in marks only. In the one case, the subject matter (wheat) must be translated into money; but not so in the other, for the subject matter is money already. In the case of wheat, therefore, the date of the breach must be considered because, presumably in Germany as here, it is the value of the wheat in marks at that time which fixes the amount of recovery. In the case of marks, however, the element of time is of no consequence since, in Germany, the value of a mark can be measured only by itself.

But in an action brought here to recover upon a failure to deliver marks in Germany, the question of time becomes material; for here a mark is not money, but a commodity; and if plaintiff is to be compensated in dollars for his *loss*, we must inquire, When did the loss occur? just as we must make that inquiry in order to fix in dollars the value of wheat in a suit to recover for the non-delivery of that commodity. To me it seems clear that, in the one case as in the other, the basis of recovery must be the value in dollars of the thing lost at the time of the loss. In this respect, a simple debt payable in marks and an obligation to deliver goods in Germany stand upon the same footing. In either case, the injured party is entitled to have in the money of this country the value of what he would have obtained if the contract had been performed at the stipulated time. Lord Eldon, in *Cash* v. *Kennion*, 11 Ves. 314, 316, expressed the applicable principle when he said: " I cannot bring myself to doubt, that, where a man agrees to pay £100 in London upon the 1st of January, he ought to have that sum there upon that day. If he fails in that contract, wherever the creditor sues him, the law of that country ought to give him just as much as he would have had, if the contract had been performed."

The date for conversion adopted by this Court after the Civil War in respect of obligations payable in

Confederate currency was the date, and not the maturity, of the obligation, upon the ground that such currency never had been lawful; but in a *dictum* by Mr. Justice Field in *Effinger* v. *Kenney,* 115 U. S. 566, 575, it is clearly recognized that, if the foreign currency involved be lawful, the date for conversion is that of the maturity of the contract. In that case, " The damages recoverable for a breach of the contract are to be measured by the value of the currency at its maturity."

To take the date of judgment for determining the value is to adopt for the measurement of a loss a test resting upon the fluctuating chances of a court calendar instead of upon an event already fixed,—that is, to put aside certainty for uncertainty. The date of the breach, whether of a contract to deliver goods or to pay money, marks the essential event which gives rise to the cause of action and bears a necessary relation to the wrong sought to be redressed; while the date of the rendition of judgment bears no relation whatever to the wrong complained of and has nothing to do with the cause of action. The cases are not agreed; but an examination of them convinces me that the conclusion I have indicated by the foregoing is supported by the great weight of authority. See for example, *Page* v. *Levenson,* 281 Fed. 555, 558; *Dante* v. *Miniggio,* 298 Fed. 845; *Wichita Mill & E. Co.* v. *Naamlooze, etc., Industrie,* 3 F. (2d) 931; *Hoppe* v. *Russo-Asiatic Bank,* 235 N. Y. 37, 39, affirming 200 App. Div. 460, 465; *Simonoff* v. *Granite City Nat. Bank,* 279 Ill. 248, 254; *Grunwald* v. *Freese,* (Cal.) 34 Pac. 73, 76; *Manners* v. *Pearson & Son,* [1898] 1 Ch. 581, 587–588, 592–593; *Société des Hôtels* v. *Cummings,* [1921] 3 K. B. 459, 461 (reversed on another point, [1922] 1 K. B. 451, 455, 463, 465), *Uliendahl* v. *Pankhurst Wright & Co.,* 39 Times L. R. 628; *Peyrae* v. *Wilkinson,* [1924] 2 K. B. 166; *Barry* v. *Van den Hurk,* [1920] 2 K. B. 709, 712; *In*

*re British American Continental Bank,* [1922] 2 Ch. 589, 594–598.

The case last cited was a winding-up proceeding, and the question arose over the conversion into English money of the amount of a debt payable in Belgium in Belgian currency. The court adopted as the date for conversion into English money the date when the debt was payable in Belgium, saying (p. 595): " . . . this mode of computation and thus converting the one currency into the other is based upon damages for the breach of contract to deliver the commodity bargained for (i. e., the foreign currency) at the appointed time and place; consequently the date for conversion is the date of breach and not the date of the judgment." After reviewing the prior cases, including both decisions in *Société des Hôtels* v. *Cummings, supra,* the court concluded that " the principle in no way depends either upon the nationality of the creditor or upon the fact that the place of payment is in the creditor's own country as distinguished from some other country, but applies, if at all, to every case where an action is brought in England for the recovery of a debt payable in some other currency than English money."

The same principle is announced in *Lebeaupin* v. *Crispin,* [1920] 2 K. B. 714, 723, in an action for breach of contract to deliver salmon. The court said: " If the damages are fixed at the date of breach where the contract is wholly to be performed in England, such also, I think, should be the result where the breach is out of England. There should not be varying rules in such a case. If the damages are once crystallized at the date of breach, then a definite date is given for the ascertainment of exchange, and the amount found payable at the hearing is awarded without regard to the fluctuations of the possible date of trial."

I think it is extremely desirable that the rule estab-_ lished should be one capable of uniform application. To take the date of the judgment is to establish a rule which does not meet this requirement. The amount of the recovery will depend upon whether suit is promptly brought or promptly prosecuted; whether the defendant interposes dilatory measures; whether the call of the docket is largely in arrears or is up-to-date; and, perhaps, upon whether there is a successful appeal and a new trial with the consequent annulment of the old judgment and the rendition of a new one. Under these circumstances it may well happen that, in one case, where judgment is not delayed, the plaintiff will recover a substantial sum, while in a precisely similar case, where judgment is delayed until the foreign currency has greatly depreciated, the sum recovered by comparison may be altogether insignificant. See *Page* v. *Levenson, supra,* pp. 558–559; *Lebeaupin* v. *Crispin, supra,* p. 722–723.

I am of opinion, therefore, that the judgment below should be affirmed.

MR. JUSTICE MCREYNOLDS, MR. JUSTICE BUTLER and MR. JUSTICE SANFORD concur in this opinion.