SAUL S. HERZFELD and Others, d/b/a/ STEPHEN RUG MILLS, Plaintiffs, *v.* THE NATIONAL CITY BANK OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, December 20, 1940.

*Leon Herzfeld* [*Ira M. Belfer* of counsel], for the plaintiffs.

*Shearman & Sterling* [*Harvey Reeves* and *Henry Harfield* of counsel], for the defendant.

GENUNG, J. Upon an " agreed statement of facts and issue, submitted to the court in lieu of affidavits under the stipulation between the parties, the plaintiffs have moved under rule 113 of the Rules of Civil Practice for summary judgment in their favor upon the cause of action set forth in the complaint, whereas the defendant has moved pursuant to rule 113 for an order dismissing the complaint and directing judgment in favor of the defendant.

The agreed statement recites the action in replevin which had been previously commenced by the plaintiffs on October 11, 1940, to recover from the defendant the possession of certain chattels, consisting of bills of lading and other documents relating to a shipment of thirteen bales of rugs which arrived in New York from Belgium on May 22, 1940; the delivery by the defendant to the marshal, pursuant to his demand, of the chattels referred to in the notice of requisition; and the further proceedings in the replevin action which culminated in the stipulation between the parties under which each party seeks a determination for judgment under rule 113 on the pleadings and on the agreed statement of facts and issue.

The single controverted issue presented by the agreed statement for determination reads as follows: " Whether or not the tender by the plaintiffs in New York to the defendant of Belgian currency in the face amount of francs 26,069.60, together with Treasury Department License No. N Y 48605, was a sufficient tender of payment to entitle the plaintiffs, upon such payment, to obtain possession of the documents of title."

The agreed facts upon which the controverted issue is to be determined may be summarized as follows:

The plaintiffs, who are engaged in New York city in the business of importing and selling carpets and rugs, through their representatives in Belgium, placed an order on October 10, 1939, with one Joseph De Brabandere, of Waereghem, Belgium, a manufacturer of rugs and carpets, for the purchase and shipment to the plaintiffs of a quantity of rugs at a specified price in Belgian francs, the merchandise to be delivered in instalments of 100 rugs " or more if possible " every ten days.

On April 4, 1940, the seller delivered to the plaintiffs an invoice for 104 rugs aggregating in purchase price 26,069.60 francs, the invoice reading " payable against documents thru the National City Bank of New York 8 days from sight after arrival of the Steamer." The thirteen bales of rugs, each containing eight rugs, represented by the said invoice, were shipped by the seller during the month of April, 1940, and arrived in New York on the steamship *Mercier* of the Compagnie Maritime Belge S. A. on or about May 22, 1940.

Under date of May 10, 1940, the Banque de Bruxelles, Brussels, Belgium, wrote to the defendant, The National City Bank of New York, in part as follows: " We hand you herein for collection; B. Francs 26069.60 documents due at sight " on the plaintiffs, covering shipment of thirteen bales of rugs by steamship *Mercier* from Antwerp to New York; the documents are listed, and the letter proceeds:

" These documents are to be delivered against payment only.

" In case of difficulties, kindly notify us by mail stating the reasons.

" After collection, please credit us with our Brussels Head Office."

The defendant on or about August 19, 1940, received this letter from Banque de Bruxelles together with the inclosed documents relating to the said thirteen bales of rugs; bill of lading, invoice, certificate of origin, list of weights, and consular invoice. These are the documents which were replevied by the plaintiffs pursuant to the requisition issued and served with the summons and complaint herein. While no draft upon the plaintiffs was inclosed with or accompanied said letter, and no such draft has been received by the defendant, it is agreed by the parties: " It is frequent that no draft is included with documents of title, and that the receiving bank is instructed to make delivery of the said documents against payment to it of the amount required, and such practice is recognized as proper by the defendant herein."

The defendant on September 3, 1940, notified the plaintiffs of its receipt of these documents and offered to deliver the said documents of title to the plaintiffs against payment of 26,069.60

Belgian francs. The plaintiffs thereupon immediately made application to the Treasury Department of the United States in accordance with Executive Order No. 6560 of January 15, 1934, for a license permitting them " to make payment in Belgian francs 26069.60 to the National City Bank of New York, 55 Wall St. on behalf of the Belgian national, to wit, Joseph De Brabandere, Waereghem, Belgium, who is the shipper of the merchandise specified in this application against the receipt of documents of ownership of certain merchandise."

Under date of September 20, 1940, there was issued to the plaintiffs a license which reads in part as follows:

" 1. Pursuant to your application of September 6, 1940, you are hereby licensed to enter into the following transaction:

" Make payment of Belgian francs, 26,069.60 to the National City Bank of New York, 55 Wall Street, and obtain merchandise shipped to Stephen Rug Mills from Joseph De Brabandere, Waereghem, Belgium, as per your application #1.

" It is stipulated that the Belgian currency is to be held in an account with the National City Bank of New York, in which a national of Belgium has a property interest within the meaning of the Executive Order #8389 of April 10, 1940 as amended."

On September 21, 1940, the plaintiffs tendered to the defendant Belgian currency in the amount of 26,069.60 Belgian francs, together with the said license from the Treasury Department and demanded delivery to the plaintiffs of the documents of ownership of the thirteen bales of rugs that were held by the defendant. The defendant refused to accept the Belgian currency and Treasury Department license, and refused to deliver the said documents of title. The plaintiffs' tender and the defendant's refusal were made in writing. The defendant's letter of refusal contains the following:

" With your letter of September 21 you offered to tender us in payment of the collection in caption Belgian currency to the equivalent of B. F. 26,069.60, and asked that we surrender the relative shipping documents to you in exchange for the currency tendered.

" In this regard we refer you to our letter of September 19, 1940, in which we quoted from an opinion of our attorneys concerning the acceptance of Belgian currency in settlement of collections of this type. As this opinion covers the matter at hand, we cannot accept your tender of Belgian currency in settlement of the collection in caption."

The defendant contends that the tender by the plaintiffs of Belgian currency in payment, accompanied by the United States restriction on its use after payment, which is incorporated into the license issued by the Treasury Department pursuant to Executive Order No. 8389 of April 10, 1940, does not constitute

a tender of payment as intended by the vendor and vendee in the contract of sale.

It is suggested by the defendant that the purpose of the Executive Orders is to prevent the value-in-exchange accruing to a Belgian national, whose country has been overrun by a hostile power, from being used by that hostile power against the Belgian's own country, and to protect him from such value-in-exchange being taken from him by conquest. It is also suggested by the defendant that by reason of the restriction imposed by the Treasury Department license on the use of the Belgian currency after payment, the contract on the part of the buyer to pay for the merchandise becomes one impossible of performance, and that the necessary result of such impossibility of performance is that the vendor " not being paid, retains the goods and sells them in dollars which would be credited to him until such time as the dollars can be used to purchase Belgian exchange pursuant to the laws of the United States."

It is thus recognized by the defendant that the Belgian vendor can no more freely deal with the merchandise or the proceeds of its sale if this contract is not consummated by the payment of the Belgian francs, than he can with respect to the Belgian currency if it were accepted in payment. In either event it will be necessary for him to wait until such time as he may freely deal with the proceeds of the sale of the merchandise. The only difference would be the substitution of dollars for Belgian francs and the subsequent use of such dollars for the purchase of Belgian exchange, when and as allowed by the laws of the United States.

The contract between the parties, however, calls for payment in Belgian francs and not in dollars. There is obviously no impossibility of performance up to the point where Belgian francs in the amount specified in the contract are actually tendered in payment. Payment of such Belgian currency has in fact been demanded by the defendant bank as the agent designated to receive payment on behalf of the Belgian vendor, and the plaintiffs have actually tendered such payment. There is no restriction upon the making of such payment in Belgian currency, since the license issued by the Treasury Department expressly permits the consummation of the transaction by making payment of the Belgian francs to the defendant and obtaining the merchandise shipped by the vendor. It is only with respect to the use of such Belgian currency after it had been paid to the defendant as the agent of the Belgian national that any restriction can be said to be imposed. The payment in Belgian francs, as called for by the contract, is neither prohibited nor restricted. It is expressly permitted by the license.

There is a condition, however, imposed by the government upon the defendant, after its receipt of the Belgian currency, to hold it " in an account with the National City Bank of New York, in which a national of Belgium has a property interest within the meaning of the Executive Order #8389 of April 10, 1940 as amended." This Executive Order is itself an amendment of Executive Order No. 6560 dated January 15, 1934, regulating transactions in foreign exchange, transfers of credits, and the export of coin and currency. The contracting parties must be deemed to have dealt with each other in contemplation of the existence of these restrictions under the laws of the United States, to the extent that such restrictions and any subsequent amendments thereof from time to time might affect the use or transmission of the proceeds of the sale when consummated in this country by the delivery of the merchandise as against payment in the form agreed upon between the parties in their contract.

On May 10, 1940, when the vendor's agent, the Banque de Bruxelles of Brussels, Belgium, instructed the defendant to collect 26,069.60 Belgian francs from the plaintiffs and to deliver the documents against such payment, Executive Order No. 8389 of April 10, 1940, was already in force for a month. Presumably the vendor was seeking to obtain payment of the Belgian currency, as prescribed by the contract, subject to any restrictions which might be imposed by the United States government as a condition for license to consummate the transaction    This has now occurred, and it is for the Belgian national in whose name or for whose benefit the account is held, to make whatever application may be necessary for appropriate relief so as to obtain the use of the proceeds of the sale in accordance with the United States laws and regulations.

It follows from this analysis of the facts as presented by the agreed statement of facts and issue and the exhibits annexed to such statement and the respective contentions of the parties, that the single controverted issue submitted to the court requires a determination that the plaintiffs' tender to the defendant of Belgian currency in the face amount of 26,069.60 francs, together with Treasury Department license No. N. Y. 48605, was a sufficient tender of payment to entitle the plaintiffs, upon such payment, to obtain possession of the documents of title.

An examination into the authorities cited in the respective briefs of the parties does not lead to any different conclusion.

The plaintiffs cite *Booth & Co., Inc., v. Canadian Govt. Merchant Marine, Ltd.* (63 F. [2d] 240); *Deutsche Bank Filiale Nurnberg v. Humphrey* (272 U. S. 517); *Societe des Hotels Le Tougnet Paris-Plage v. Cummings* (1 K. B. 451) and other cases for the general proposition, so well expressed by Mr. Justice HOLMES in the *Deutsche*

*Bank* case that: "An obligation in terms of the currency of a country takes the risk of currency fluctuations and whether creditor or debtor profits by the change the law takes no account of it." The defendant does not dispute this proposition of law, but falls back on the contention that whereas the Belgian francs in the amount tendered would ordinarily be payment as prescribed by this contract, nevertheless the payment was conditional by reason of the restriction on the free use of the proceeds imposed by the Treasury Department license. This contention has already been considered above with the resulting conclusion that the restriction does not attach to the payment, but applies to the vendor's use of the proceeds after payment. The contract of purchase and sale does not stipulate any covenants or conditions with respect to manner of transmission or application of the proceeds after payment is made.

The defendant cites the rulings in *Benedict* v. *Field* (16 N. Y. 595) and *Roget* v. *Merritt* (2 Caines Cas. 117) that where a sales contract calls for payment for the goods with a promissory note, and the maker of the note has become bankrupt intermediate the contract and the date of delivery, the vendor is not obliged to accept the promissory note of the bankrupt as payment, on the ground that "before the time for performance arrived the essential consideration on which it was based had failed." (*Benedict* v. *Field, supra*, p. 598.) The court in the *Benedict* case reasoned that when the contract was made the firm whose promissory note was to be accepted as payment was in good credit, and the ability of that firm to give notes was assumed, "and was really the consideration of the defendant's engagement to sell and deliver the goods." On the analogy of a vendor's right of stoppage *in transitu*, on discovery of the vendee's insolvency even after the goods had been shipped and title had passed, by arresting the delivery and rescinding the sale, the court found no difficulty in enforcing a similar implied right of the vendor to refuse the promissory note of an insolvent in payment.

These cases do not support the defendant's contention here. There is no showing that Belgian currency has become valueless, nor is there any issue presented as to the greater or lesser value of that currency between the date of the contract and the date of delivery. Furthermore, even if there had been a showing of such a decrease in value or to no value at all of the Belgian francs, then under the cases of *Tillman* v. *Russo Asiatic Bank* (51 F. [2d] 1023) and *Dougherty* v. *Equitable Life Assurance Society* (266 N. Y. 71), cited by the defendant under another point of its brief, payment in currency of such reduced value, since it is the kind

of currency stipulated in the contract as the mode of payment, constitutes performance by the vendee. In the two cases last cited the courts held that the plaintiffs were entitled to no recovery, because at the time of the breach or rescission the value of the currency specified in the contract, to wit, rubles, was nothing. Finally, in this case there was no repudiation of the currency stipulated in the contract as having become valueless. The defendant's principal, the vendor, directs its agent to accept the specified amount of Belgian francs in payment, the defendant makes demand for payment in that currency, as instructed, and the plaintiffs immediately tender payment in that currency pursuant to such demand. (Agreed Statement of Facts, ¶¶ 6, 7, 10, 11, 12, 13, 14, 15 and 16.)

The cases cited by the defendant in which German obligors of United States citizens, who had obligated themselves by their contracts to pay dollars in the United States, unsuccessfully asserted in our courts as a defense to their non-payment of the dollars, the German law which prohibited them from paying in dollars and instead directed them to pay into the German Konversionskasse a certain amount of marks which the German law declared to be payment (*Glynn* v. *United Steel Works Corporation*, 160 Misc. 405; *Deutsch* v. *Gutehoffnungshutte, etc.*, 168 id. 872; *Central Hanover Bank & Trust Co.* v. *Siemens & Halske Gesellschaft*, 15 F. Supp. 927) do not support the defendant's contention. In those cases there was a refusal to pay the kind of currency prescribed by the contract, and the excuse offered for such refusal was held to be without merit. Here there was tender of payment of the kind of currency called for by the contract, and by the demand for payment made by the defendant on the plaintiffs in accordance with its instructions from the vendor, and the plaintiffs are not required to offer any excuse for complying with the terms of the contract and with such demand for payment in Belgian francs.

When the defendant on September 3, 1940, notified the plaintiffs of its receipt of the documents of title and offered to deliver them to the plaintiffs against payment of 26,069.60 Belgian francs, it must have known of the existence of Executive Order No. 8389 of April 10, 1940, as amended, which imposed certain regulations with respect to the Belgian francs they were to collect as the proceeds of the sale pursuant to their demand. By making such demand, the defendant and its principal elected to subject the proceeds to such government regulations and cannot now complain of them.

The plaintiffs' motion for judgment is granted and the defendant's motion is denied.