### PARIS v. CENTRAL CHICLERA, S. DE R. L.
#### No. 13459.

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1952.

Rehearing Denied Feb. 18, 1952.

Rives, Circuit Judge, dissented.

---

tract contains an express statement that the engine will be suitable for use on the Medric.

6. 41 Stat. 1003, 46 U.S.C.A. § 951.

Albert W. Taylor, McAllen, Tex., for appellant.

Robert F. Cherry, Edinburg, Tex., for appellee.

Before HOLMES, RUSSELL, and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

This appeal may be denominated an aftermath of the "bubble gum" fad which raged some years ago during which children and youth (in many communities at least) vied in competition to make the loudest "pop" or blow the largest "bubble" per ora from the chewing gum. The trial Court, hearing the case without a jury, rejected the defense asserted by the appellant to the appellee's claim which sought to recover for breach of a contract to purchase a specified quantity of bubble gum, and made findings of fact which evidenced that the Court credited the reason for failure to accept and pay for the gum assigned by appellant in letters at the time rather than the reasons later assigned in his defense to the suit. Holding the prior stated reasons, i. e. competition in the market by American production and inability of appellant to sell, wholly insufficient to avoid liability, as indeed they were, the Court entered judgment for the plaintiff. The findings of the Court are set forth in the margin,[1] and, with the

---

1. "I find from a preponderance of the evidence, the following to be the pertinent facts in this case:

"1. On or about August 15, 1947, plaintiff and defendant, at Reynosa, Mexico, entered into a verbal contract, which contract was duly confirmed in writing by each of the contracting parties.

"2. Under the terms of the contract so entered into, plaintiff agreed to sell, and defendant agreed to buy, 10,000 boxes of bubble gum brand 'Paris (King-size) 1¢'—each large box containing 18 paper boxes of 120 tablets each, with a net weight per tablet of five grams; that is to say, a total of 180,000 paper boxes of 120 tablets, at the rate of $2.00 (Two pesos Mex. Cy.) each paper box of 120 tablets, f. o. b. Mexico City, including invoices, stamps and packing. Plaintiff was also to furnish proper export licenses for such merchandise.

"3. On August 29, 1947, plaintiff, in acknowledging receipt of letter from defendant confirming the contract for the 10,000 boxes of bubble gum, informed defendant that labels, paper boxes, and large cartons necessary to ship the bubble gum in had been ordered.

"4. Plaintiff shipped to defendant, and defendant received and paid for, four shipments of 250 boxes of bubble. gum each. Such shipments were made from Mexico City, and the last shipment was made on or about September 27, 1947.

"5. The gum so shipped was received in good order and paid for by defendant without complaint.

"6. On or about October 29, 1947, defendant advised plaintiff in writing that the sale of bubble gum was 'extremely slow, due to the invasion of the market by American bubble gum in competitive prices.'

"7. On or about November 5, 1947, plaintiff advised defendant in writing of the fact that plaintiff had purchased labels, paper boxes and large cartons in accordance with the contract, and that 300 large boxes of the bubble gum were then ready for shipment.

"8. On December 15, 1947, defendant advised plaintiff that he would not take any more of the merchandise 'until the condition of the market improves.'

"9. On December 16, 1947, plaintiff again advised defendant in writing of the efforts made and expenses incurred by plaintiff in complying with the contract and refused to accept defendant's repudiation of such contract.

"10. At the time of the repudiation of the contract by defendant, plaintiff had incurred expenses and sustained losses, as follows: [These are itemized]

"11. Plaintiff, before instituting this suit notified defendant of its claim in detail, and repeatedly demanded payment thereof, but defendant refused, and still refuses to pay same, or any part thereof.

"12. Plaintiff was ready, willing and able to at all times comply with its obligation under the contract, and the damage and loss above set out directly, proximately, naturally, and necessarily resulted in the ordinary course of events by reason of defendant's failure to comply with his obligations under said contract.

summary of the defendant's contentions, which we have there likewise stated, furnish sufficient factual background to disclose the nature of the controversy.

Upon the facts, the appellant insists that the Court should have accepted his version of the transactions as more credible under all the circumstances than the testimony in behalf of the plaintiff and further, because, as contended, the plaintiff's chief witnesses were shown to be unworthy of belief. It is also contended, as a matter of law, that even if damages were to be awarded the American currency value thereof should have been computed by use of the rate of exchange existing on the date of judgment, and not, as done by the Court, on that existing on the date of the filing of the complaint.

The appellant's challenge to the sufficiency of the evidence, or what in essence amounts to, a contention that the Court should have rejected the evidence of the plaintiff's witnesses as unworthy of belief, is not sustained upon our examination of the record. Credibility of the witnesses, the sifting of conflicting testimony and acceptance of that which seems most trustworthy, the determination of where the greater weight of the evidence lies, in short, determining the truth of the issue in dispute is, peculiarly and properly, the primary responsibility of the trial Court. It is true, of course, that we are amply authorized to set aside clearly erroneous findings of fact made by the trial Court, but we find here no proper reason why we should do so.

There is merit, however, in the appellant's remaining assignment of error. The contract in question was entered into in Mexico. It was to be entirely performed in that country, and the sales price which the purchaser stipulated to pay and the seller to receive was stated only in the currency of that country, that is, "at the rate of $2.00 (Two pesos Mex. Cy.)" for each box of 120 tablets. In these circumstances, the case falls squarely within the ruling in Deutsche Bank Filiale Nurnberg v. Humphrey, 272 U.S. 517, 47 S.Ct. 166, 71 L. Ed. 383. It is cited and relied upon by both the parties in support of their position here. Manifestly, both can not be correct. Appellee apparently convinced the trial Court (as argued here) that the language in that opinion, 272 U.S. at page 520, 47 S.Ct. at page 167, that the American Court "ought to enforce no greater obligation than exists by that law *at the moment when the suit is brought*" (the emphasis is the appellee's) established the time of filing of suit as the critical date. This contention, however, misconceives the holding in the controlling authority referred to. Whether the critical date to compute conversion from foreign currency to American currency for the purpose of judgment should be that of the filing of suit was not involved. The Court was called upon to accept one of only two dates as proper for this purpose. One was the date of breach; the other was the date of judgment. The majority opinion declared the latter to be the proper one. Grounds for difference of opinion on the question undoubtedly existed and many, if not all, of these are set forth in the dissenting opinion in that case, but the decision has settled the question for us. Since its rendition, in cases where the obligation is performable in a foreign country in the money of that country, the Courts of this country have generally held that the necessary conversion to American currency[2] should be

"13. Plaintiff's damage should be calculated at the rate of exchange existing on the date of the filing of plaintiff's petition in this cause, to-wit: July 16, 1948.

"14. The rate of exchange on July 16, 1948, was $4.70 pesos, Mexican currency, for one dollar, United States currency."

There was no dispute as to the provisions of the contract found by the Court. However, the defendant asserted that, in addition to these terms, the oral agreement also embodied other material provisions with reference to the specifications of the size, wrapping, packing and quality of the individual pieces of gum and also a requirement that the entire order should be delivered within 30 days from date of written confirmation.

2. Frontera Transportation Co. v. Abaunza, 5 Cir., 271 F. 199, 202.

computed from the rate of exchange prevailing on the date of the judgment.[3] Appellee also cites Hicks v. Guinness, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168, but this authority ruled a different situation from that considered in the Deutsche Bank case supra, and is therein distinguished, as is likewise done again in Zimmermann v. Sutherland, 274 U.S. 253, 256, 47 S.Ct. 625, 71 L.Ed. 1034.

In the present case, the conversion of the found damages in Mexican pesos to American currency should have been computed on the basis of the rate of exchange existing on the date of judgment. Appellee contends that such rate of exchange prevailing on the date of judgment was 8.62 pesos Mexican currency for each $1.00 United States currency as contrasted with the 4.70 to 1 basis used by the trial Court. This, or even an approximate change, would result in a substantial decrease in defendant's obligation. A proper computation as herein indicated should be made.

The determination of the trial Court that the plaintiff suffered damages in the amount of $83,149.20 pesos Mexican currency is authorized, as we have held. The conversion factor was wrong. The only error thus lies in the improper ascertainment of the amount of permitted recovery expressed in terms of American currency. The judgment of the trial Court is modified only to this extent, and the proceeding is returned to the District Court with direction that, after ascertainment by any appropriate means of the rate of exchange prevailing on the date of judgment, the damages found be thereby computed and converted in amount to terms of American currency.

The judgment is modified and affirmed, and the cause remanded to the district Court with direction to it to make the necessary correction in the judgment appealed from without changing the date of said judgment. The costs of appeal are awarded to appellant.

Modified and affirmed.

RIVES, Circuit Judge (dissenting).

By invoking the law's delay, defending and ultimately losing this suit, the defendant has gained more than eight thousand dollars, and the plaintiff has lost a like amount, nearly half of its claim.

Whether Deutsche Bank Filiale Nurnberg v. Humphrey, 272 U.S. 517, 47 S.Ct. 166, 71 L.Ed. 383, actually does necessitate such an unjust result is a question requiring the most searching consideration. That was a five to four decision with majority opinion by Justice Holmes, and a strong dissenting opinion by Justice Sutherland. Only one year earlier Justice Holmes had written the opinion in Hicks v. Guinness, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168, for a unanimous Court, except that Justice Stone took no part in the case. The basis upon which the Deutsche Bank case rests is indicated by Justice Holmes in drawing the distinction between that case and Hicks v. Guinness:[1] "In this case, unlike Hicks v. Guinness, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168, at the date of the demand the German Bank owed no duty to the plaintiff under our law. It was not subject to our jurisdiction and the only liability that it incurred by its failure to pay was that which the German law might impose. It has incurred no additional or other one since. A suit in this country is based upon an obligation existing under the foreign law

3. Shaw, Savill, Albion & Co. v. The Fredericksburg, 2 Cir., 189 F.2d 952; Royal Ins. Co. v. Compania Trasatlantica Espanola, D.C., 57 F.2d 288, 292; The West Arrow, 2 Cir., 80 F.2d 853. The rule is well stated in 5 Williston on Contracts (Rev. Ed.) 3930.

1. In the subsequent case of Zimmermann v. Sutherland, 274 U.S. 253, 255, 256, 47 S.Ct. 625, 71 L.Ed. 1034, Justice Holmes

again distinguished the two cases as follows: "The distinction between the Deutsche Bank Case and Hicks v. Guinness, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168, is not, as argued, that the plaintiff in Hicks v. Guinness was in the United States, but that, as the court understood the facts, the debt was payable in New York and subject to American law, so that upon a breach of the contract there arose a present liability in dollars."

at the time when the suit is brought, and the obligation is not enlarged by the fact that the creditor happens to be able to catch his debtor here." 272 U.S. 517, 518–519, 47 S.Ct. 166.

The same thought was emphasized by the concluding sentence of the majority opinion: "Here we are lending our Courts to enforce an obligation (as we should put it, to pay damages,) arising from German law alone and ought to enforce no greater obligation than exists by that law at the moment when the suit is brought." 272 U.S. 517, 520, 47 S.Ct. 166, 167.

The relief granted by the courts of this Country on an obligation existing under German law alone was to be exactly the same as the relief that would have been afforded by the courts of Germany if the suit had been brought there. When the Deutsche Bank failed to pay the deposit on demand it was not subject to our jurisdiction, and Justice Holmes carefully pointed out that the Bank "has incurred no additional or other one (liability) since."

In the case at bar, the defendant was subject throughout to the jurisdiction of the courts of this country for he was a resident of and operated his business in Mc-Allen, Hidalgo County, Texas. From that place he wrote and mailed to the plaintiff a letter repudiating his contract. The plaintiff, before instituting suit, prepared a detailed statement of the damages it had suffered and demanded payment thereof from the defendant, but the defendant refused. The defendant was still in Texas and that is where the demand and refusal took place. It may be that the plaintiff could have recovered its damages without a prior demand, but nevertheless the defendant owed a duty where the demand was made to pay what the plaintiff was due.

The place where the contract was entered into and was to be performed is not controlling because, prior to the institution of this suit, the contract had been termi-

nated by the defendant's repudiation and breach thereof. The defendant should not be heard to say that if he had performed his contract he would have paid in Mexican currency, for he did not perform; instead he repudiated and broke his contract. It then became necessary for the plaintiff to search out the defendant in his home state of Texas, demand redress, and upon refusal, to sue in the federal court in Texas where the judgment must be in dollars and not in pesos.[2] The plaintiff's suit was not to enforce the contract, not for specific performance, not as in the Deutsche Bank case for money on deposit, but the plaintiff's suit was for the defendant's breach of his contract and his refusal on demand to pay the damages suffered by plaintiff from such breach.[3]

In Hicks v. Guinness, supra, there was a legal duty owed in this Country because the debt was payable in the United States. In the case at bar there was a legal duty owed in this Country because the defendant was in Texas when he repudiated his contract, and was still there when he refused on demand to pay the consequent damages. It seems to me that instead of being controlled by the Deutsche Bank case, this case should be decided in accordance with the following principles stated by Justice Holmes in Hicks v. Guinness: "The debt was due to an American creditor and was to be paid in the United States. When the contract was broken by a failure to pay, the American firm had a claim here, not for the debt, but, at its option, for damages in dollars. It no longer could be compelled to accept marks. It had a right to say to the debtors You are too late to perform what you have promised and we want the dollars to which we have a right by the law here in force. Gould v. Banks, 8 Wend., N.Y., 562, 567. The event has come to pass upon which your liability becomes absolute as fixed by law. Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 543, 23 S.Ct. 754, 47 L.Ed. 1171.

2. Frontera Transportation Co. v. Abaunza, 5 Cir., 271 F. 199, 202; Shaw, Savill, Albion & Co. v. The Fredericksburg, 2 Cir., 189 F.2d 952, 954; 5 Williston on Contracts, Revised Edition, page 3927.

3. After the defendant's breach of contract had given rise to plaintiff's cause of ac-

tion, plaintiff's rights could not be affected by any subsequent offer of the defendant to perform by paying in pesos. Lima Locomotive & Machine Co. v. National Steel Castings Co., 6 Cir., 155 F. 77, 11 L.R.A.,N.S., 713; 12 Am.Jur. 966, Contracts, sec. 388.

There is no doubt that this rule prevails in actions for a tort, Preston v. Prather, 137 U.S. 604, 11 S.Ct. 162, 34 L.Ed. 788, and in actions for the failure to deliver merchandise. Hopkins v. Lee, 6 Wheat. 109, 5 L.Ed. 218. The principle is the same in a contract for the payment of marks. The loss for which the plaintiff is entitled to be indemnified is 'the loss of what the contractor would have had if the contract had been performed,' Chicago, Milwaukee & St. Paul Ry. Co. v. McCaull-Dinsmore Co., 253 U.S. 97, 100, 40 S.Ct. 504, 64 L.Ed. 801, it happens at the moment when the contract is broken, just as it does when a tort is committed, and the plaintiff's claim is for the amount of that loss valued in money at that time. The inconveniences and speculations that would be the result of a different rule have been pointed out in arguments and decisions, and on the other hand the momentary interest of the country of the forum may be in favor of taking the date of the judgment, but the conclusion to which we come seems to us to flow from fundamental theory and not to need other support." 269 U.S. 71, 80, 46 S.Ct. 46, 47.

Also in Sutherland v. Mayer, 271 U.S. 272, 295, 46 S.Ct. 538, 543, 70 L.Ed. 943, the Court held that " * * * the exchange value of marks in American money is to be taken as of the time when commercial intercourse, and therefore settlement, first became lawful, rather than at the time of the accounting * * *".

I therefore respectfully dissent.

Rehearing denied; Rives, C. J., dissents.