### In re NATIONAL PAPER & TYPE COMPANY OF PUERTO RICO, Debtors.

**Bankruptcy No. B-85-01442(ESL).**

United States Bankruptcy Court,
D. Puerto Rico.

Aug. 12, 1987.

---

Teodoro Peña Garcia, Hato Rey, P.R., for debtor.

Jose A. Suro, Otero Suro & Otero Suro, Hato Rey, P.R., for movant.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

This case is before the Court on the motion by Efectos Litograficos, C.A., (Efectos) requesting the Court to quantify its claim [1].

The matter has been submitted to the Court upon the legal memoranda filed by Efectos and the debtor in possession since both parties have agreed that the relevant facts to this controversy are not in dispute. The threshold issue to be decided by this Court is the time that a foreign judgment is effective against a domestic entity in order to determine what rate of exchange is applicable. Efectos alleges that the rate of exchange applicable is the one existing at the time that the foreign court entered judgment or, in the alternative, the date when the judgment was made enforceable by the forum court. The debtor alleges that the applicable rate of exchange is the one existing at the time when this Court, that is, the Bankruptcy Court, renders its judgment on this contested matter.

A summary of the events leading up to Efectos' claim against National Paper & Type Company of Puerto Rico, Inc. (National Paper) is found in the decision by the Supreme Court of Puerto Rico in the case of *Efectos Litográficos, C.A. v. National Paper & Type Company of Puerto Rico, Inc.* 112 D.P.R. § 389 (1982). In said opinion the Supreme Court of Puerto Rico stated the following:

"Efectos Litográficos, C.A., the plaintiff-appellee herein, filed an action against National Paper & Type Company of Puerto Rico, Inc., before the Cámara Civil y Comercial de la Tercera Circunscripción del Juzgado de Primera Instancia del Distrito Nacional de la República Dominicana. It claimed RD$150,000 under the Ley sobre Protección a los Agentes Importadores de Mercaderías y Productos [Act to Protect Merchandise and Products Import Agents] No. 173 of April 6, 1966, as amended by Act No. 622 of December 28, 1973, for damages sustained by National Paper's action of allegedly substituting it as exclusive agent in the Dominican Republic. This Dominican legislation is almost identical to our Act No. 75 of June 24, 1964, as amended, 10 L.P.R.A. § 278 *et seq.*

The case was heard in default. The Dominican Court ordered National Paper, and its Dominican branch, to pay RD$300,000 for moral and material damages, plus legal interest—1% monthly on that amount from the filing of the complaint—which by June 4, 1979, amounted to RD$120,000, plus the costs. National Paper unsuccessfully appealed before the Dominican Court of Appeals, and then resorted to cassation. On May 4, 1979, the Supreme Court of the Dominican Republic refused to alter the decision.

Efectos Litográficos then filed a complaint before the Superior Court of Puerto Rico to collect the amounts awarded under the foreign judgment." (Footnotes omitted). (Translation by the Supreme Court of Puerto Rico found in the Official Translations of the Opinions of the Supreme Court of Puerto Rico, Volume 12 at page 486).

After several interlocutory appeals to the Supreme Court of Puerto Rico, on September 9, 1985 the Superior Court of Puerto Rico (Case No. 79–3785–806) entered an Opinion and Order declaring valid and enforceable in Puerto Rico the original judgment entered by the Supreme Court of the Dominican Republic.

On October 15, 1985 the Supreme Court of Puerto Rico refused to review the Sep-

---

**1.** On May 9, 1986 Efectos filed Proof of Claim number 27 in the amount of $575,000.00 plus interest.

tember 9, 1985 judgment and remanded the case to the Superior Court in order to determine the amount of the judgment within twenty four (24) hours. On the same date, that is, October 15, 1985, National Paper filed the instant petition under Chapter 11 of Title 11, United States Code.

## CONCLUSIONS OF LAW

The matter before the Court is to determine the amount of the claim filed by Efectos. Such an action is a core proceeding within the purview of § 157(b)(2)(B) of Title 28, United States Code.

The leading case in the First Circuit concerning the exchange rate to be applied concerning foreign judgments is *In Re Good Hope Chemical Corporation*, 747 F.2d 806, 811 (1st Cir.1984), cert. denied 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 845 (1985). The Court in *In Re Good Hope Chemical Corporation* held that:

"The judgment day rule applies only when the obligation arises entirely under foreign law. If, however, at the time of breach the plaintiff has a cause of action arising in this country under American law, the breach day rule applies."

The judgment which supports Efectos' claim is an obligation under foreign law. Consequently, the judgment day rule is the one applicable. The legal memoranda filed by both parties are clearly in agreement that the judgment day rule is the one applicable. The difference of opinion lies as to which judgment will be the one setting the time for converting a judgment in foreign currency into local currency.

Section 144 of the Restatement (Second) of Conflicts of Laws (1971) provides that:

"When in a suit for the recovery of money damages the cause of action is governed by the local law of another state, the forum will convert the currency in which recovery would have been granted in the other state into local currency *as of the date of the award.*"
(Emphasis ours).

*See* also, *Nimrod Marketing (Overseas) Ltd. v. Texas Energy Investment Corp.,* 769 F.2d 1076 (5th Cir.1985).

The problem of converting a foreign judgment into local currency has been the subject of scholarly debate. See footnote one (1) to *"Conversion Date of Foreign Money Obligations,"* 65 Columbia L.Rev. (1965). The leading case on this matter is *Die Deutsche Bank Filiale Nurnberg v. Humphrey,* 272 U.S. 517, 47 S.Ct. 166, 71 L.Ed. 383 (1926), wherein the Court held that:

"An obligation in terms of the currency of a country takes a risk of currency fluctuations and whether creditor or debtor profits by the change the law takes no account of it.... Obviously in fact a dollar or a mark may have different values at different times but to the law that establishes it is always the same. If the debt had been due here and the value of dollars had dropped before suit was brought the plaintiff could recover no more dollars on that account. A foreign debtor should be no worse off."

The Supreme Court decision in *Deutsche Bank* was the subject of a law review article. See, Note, *"Fluctuating Rates of Exchange and the Conflict of Laws",* 40 Harvard L.Rev. 619, 624–625 (1926–27). Premised on the principles of certainty and consistency the article commented the following:

"The analysis of the Supreme Court in the *Deutsche Bank* case seems eminently sound. Under the prevailing theory of the conflict of laws, the right which the foreign law creates is not a right to be maintained in as good a position as the plaintiff would, or might, have enjoyed had the contract been performed, but rather a right to damages expressed in units of the foreign money. This right comes into existence at the time of the breach and the character of it should not differ according to whether the contract is to deliver commodities or money. Though the value of the money of the country where breach occurred may fluctuate, the number of units to which the plaintiff has a right under the law of that country remains the same. *Consequently, when a suit is brought to enforce*

*this right, these units must be translated into the money of the forum at the rate of exchange prevailing at the date when the foreign right is merged in a judgment of the forum.* On the other hand, when the contract is for delivery of units of the foreign money in the forum, the law of the forum creates a right at the time of breach to so many units of its own money as damages, and hence the breach date rule should be applied. The application of the breach date or judgment date rules will therefore depend, not upon a varying policy of favoring the defendant or the plaintiff, nor upon an arbitrary decision, but upon the place where the breach has occurred. Whether or not the plaintiff or the defendant will be benefitted by an application of these principles will depend entirely upon whether the currency of the foreign country has depreciated or appreciated. Certainty and consistency with principle will thus be attained, without the surrender of practicability or general fairness." (Footnotes omitted.) (Emphasis ours).

See also, Note, *"Dollar Damage Awards to Foreign Plaintiffs: Conversion and Revaluation of Foreign Currencies"*, 61 Yale L.J. 758 (1952).

This Court adopts the above cited reasoning and decides that the rate of exchange to be applied is the one existing at the time the foreign judgment was merged in a Judgment of the forum, that is, September 9, 1985.

In view of the foregoing, it is hereby ordered that the amount of the movant's claim be determined based upon the exchange rate prevailing on September 9, 1985 date of the judgment entered by the Superior Court of Puerto Rico, San Juan Part, in which it recognizes as enforceable the judgment rendered by the court of the Dominican Republic.

SO ORDERED.