**SUN INSURANCE OFFICE, LIMITED v. ARAUCA FUND.**

The ARAUCA.

No. 400–M.

United States District Court
S. D. Florida, Miami Division.

June 7, 1948.

Bigham, Englar, Jones & Houston, of New York City and Smathers, Thompson, Maxwell & Dyer, of Miami, Florida, for libelant.

Fred. Botts, Assistant U. S. Attorney, of Miami, Florida, for respondent the United States.

James D. Hill, of Washington, D. C., for claimant Tom C. Clark, Attorney General.

HOLLAND, District Judge.

The above cause having duly come on to be heard in its regular order on the 7th day of July, 1947, upon the pleadings and proofs, and having been argued and submitted on written briefs by the advocates of the respective parties and the court being fully advised and satisfied in the premises, the court now makes the following findings of fact and conclusions of law in accordance with its opinion-order dated February 4, 1948:

## Findings of Fact

1. The libelant, Sun Insurance Office, Ltd., is a corporation organized and existing under the laws of the United Kingdom of Great Britian and North Ireland, with principal office and place of business in London, England, and the Hamburg-American Line is a corporation organized and existing under the laws of Germany, with principal office and place of business in Hamburg, Germany.

2. In October 1938, Hamburg-American Line shipped on its vessel, the "Deutschland", from Germany to New York, a cargo which included 50 bales of hops shipped by Adolph Blum & Popper at Hamburg, consigned to Bode & Voight at New York and insured by the libelant.

3. The bill of lading covering the shipment of said 50 bales of hops contained the following provisions:

23. General average is to be adjusted and payable according to York Antwerp Rules of 1924 and as to matters not therein provided for according to the laws and usages of the vessel's port of registry or of the port of destination at Shipowner's option. All general average adjustments shall be drawn at vessel's port of registry or elsewhere at Shipowner's option by average adjusters appointed by the Shipowner. The Shipowner shall have a lien on the goods for contributions to general average, and the shippers, consignees and/or owners of the cargo or holders of this bill of lading shall prior to the delivery of cargo in such cases execute and deliver to the Shipowner an average bond and/or shall make a deposit in cash or give such satisfactory guarantee as the Shipowner may require equivalent to the proportion of the general average charges that may be estimated by the Shipowner to become due from the cargo. In order to determine the respective contributions to general average, the receivers of the goods or their shippers shall be required to declare the value of the goods at port of discharge.

\* \* \* \* \* \*

28. Except as hereinabove otherwise provided the law of Germany shall apply to, govern and control all rights and liabilities arising under this bill of lading. The courts of Hamburg shall have exclusive jurisdiction of any suit, action or proceeding brought in Germany against the Shipowner, its officers or agents, under this bill of lading.

4. On or about October 25, 1938, during the course of said voyage, a fire occurred on the "Deutschland" in the hold in which the said 50 bales of hops were situated. In extinguishing the fire the said 50 bales of hops were damaged and rendered worthless by water under circumstances giving rise to a cause of general average.

5. The voyage terminated in New York on or about October 28, 1938, and upon discharge of the cargo libelant paid the amount of the loss to its insured, the consignee.

6. Thereafter, the Hamburg-American Line, pursuant to the terms of the bill of lading covering the said 50 bales of hops, appointed Alfred Schmidt, E. Prosch, and Ludwig Schroeder, of Hamburg, Germany, general average adjusters, and on April 30, 1940, the adjusters issued a general average statement in which the libelant was awarded the sum of 21,660.70 German reichsmarks as a result of the destruction of the said 50 bales of hops. The libelant was also the insurer of three other shipments in said cargo which were debtors in general average in the total sum of 346.34 German reichsmarks, and the libelant was therefore awarded, by the said general average adjusters, a net credit in the sum of 21,314.36 German reichsmarks. The said general average adjusters thereafter proceeded to

collect general average debits and disburse credits. At the time of the issuance of said general average statement and award in favor of the libelant, the governments of Germany and the United Kingdom of Great Britain and North Ireland were at war and commercial intercourse between the libelant and nationals of Germany was interdicted, and the said general average adjusters therefore deposited the said net credit of 21,314.36 German reichsmarks to libelant's credit at the Dresdner Bank, Hamburg, and said sum so remains on deposit to libelant's credit at this time.

7. On July 11, 1941, libelant filed in this court its libel in personam with clause of foreign attachment in a cause of general average against the Hamburg-American Line, based upon the destruction of the said 50 bales of hops, and alleging that none of the respondent's officers were within this district and respondent had no office within this district, but that certain of respondent's property, to wit, the steamship "Arauca" was within the district.

8. On the following day, July 12, 1941, a deputy marshal of this court attached the steamship "Arauca", property of the Hamburg-American Line, then in Port Everglades, Florida, and within the jurisdiction of this court.

9. Executive Order No. 8389, 12 U.S.C.A. § 95a note, had been made applicable to certain property of nationals of Germany on June 14, 1941, and was in force and effect at the time of said attachment. The libelant did not apply for or procure a license under the said Executive Order authorizing the attachment of the "Arauca".

10. On July 28, 1941, title to and possession of the steamship "Arauca" was requisitioned by the United States Maritime Commission pursuant to the Act of June 6, 1941, P.L. 101, 77th Cong., 1st Sess., 50 U.S.C.A.Appendix, § 1271 et seq., and on May 3, 1943, the Maritime Commission deposited with the Treasurer of the United States the sum of $10,000 on account of just compensation for the requisition of said vessel.

11. Thereafter, on October 26, 1943, libelant commenced the present action in rem against the fund deposited with the Treasurer of the United States pursuant to the provisions of the Act of June 6, 1941, as amended by the Act of March 24, 1943, P.L. 17, 78th Cong., 1st Sess., 50 U.S.C.A.Appendix, § 1271 et seq.

12. On October 28, 1942, the Alien Property Custodian issued Vesting Order No. 126, 7 F.R. 7061, vesting in himself all property of any nature whatsoever owned or controlled by, payable or deliverable to, or held on behalf of or on account of or owing to the Hamburg-American Line. Thereafter, the Alien Property Custodian filed herein his answer and claim, and on March 11, 1947, Tom C. Clark, Attorney General, as successor to the Alien Property Custodian, was substituted in all respects as a party in the place and stead of the Alien Property Custodian.

13. The sum of 21,314.36 German reichsmarks was the equivalent of 8540.66 United States dollars at the rate of exchange prevailing on October 28, 1938, the date of the termination of the voyage in New York. As of the date of this decree there is no exchange or rate of exchange between German reichsmarks and dollars, and reichsmarks are worthless in terms of dollars.

## Conclusions of Law

1. The court has jurisdiction of the subject matter of this action by virtue of the provisions of the Act of June 6, 1941, P.L. 101, 77th Cong., 1st Sess., as amended, 50 U.S.C.A.Appendix, § 1271 et seq.

2. By Vesting Order No. 126 the Alien Property Custodian became owner of the claim to just compensation arising from the requisition of the "Arauca" by the United States Maritime Commission subject, however, to the provisions of the Act of June 6, 1941, as amended, and the court is not deprived of jurisdiction herein by the said vesting order or by any provision of the Trading with the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 1–39, or of the Paris Reparations Agreement of January 14, 1946.

3. On the date of the requisition of the "Arauca" by the United States Maritime Commission, July 28, 1941, the libelant herein had a valid attachment lien on the

vessel by virtue of its attachment of July 12, 1941, notwithstanding the fact that no license authorizing said attachment was secured from the Secretary of the Treasury under the provisions of Executive Order 8389. No license or permit under said Executive Order was required to validate libelant's attachment lien.

4. Under Article 23 of the bill of lading covering the shipment of the 50 bales of hops in question, the ship owner was entitled to have general average adjusted and paid according to the laws and usages of the vessel's port of registry, Hamburg, Germany, and under Article 28 all liabilities arising under the said bill of lading were to be governed and controlled by the laws of Germany. However, these provisions of the bill of lading, the applicable laws of Germany, and the deposit of libelant's general average credit in a bank in Germany do not require the libelant to go to Germany to collect its credit or limit libelant to a recovery of reichsmarks in Germany. Libelant is entitled to proceed against the ship owner at any point where property of the debtor can be found, and the present action was properly brought in this district. Under York-Antwerp Rule G general average is to be adjusted with respect to both loss and contribution upon the basis of values at the time and place when and where the adventure ends, but the libelant's right is not based upon Rule G but rather upon libelant's basic right as a creditor to proceed to collect at any point where property of the debtor can be found.

5. The ship owner having exercised its option to have general average adjusted and paid in Germany pursuant to the applicable laws of Germany, its obligation was one to pay in Germany and in reichsmarks. The decision herein is thus governed by Die Deutsche Bank v. Humphrey, 272 U.S. 517, 47 S.Ct. 166, 71 L.Ed. 383; Royal Insurance Company v. Compania Transatlantique Espanola, D.C., 57 F.2d 288, and similar cases holding that where an obligation is payable in a foreign country in the currency of that country and action is brought on the obligation in this country the creditor is limited to a recovery of sufficient dollars to equal its credit in foreign currency at the rate of exchange prevailing on the date of judgment. Accordingly, the libelant herein is limited to a recovery of dollars to equal 21,314.36 German reichsmarks at the rate of exchange prevailing on the date of the decree herein. As there is no rate of exchange between dollars and reichsmarks at this time and as reichsmarks are worthless in terms of dollars, libelant is entitled to recover nothing.